## NATHAN BIJUR et al.

*v.*

## THE STANDARD DISTILLING AND DISTRIBUTING COMPANY et·al.

[Decided October 2d, 1908.]

1. The rule allowing stockholders to avoid contracts made with another corporation by common directors, applicable where the contract is made through the directors alone, is inapplicable to the action of directors in those statutory proceedings where the final action is that of the stockholders themselves, acting in their individual rights and according to their individual interests.

2. Complainants, stockholders of a dissolved corporation, having sued to wind up its affairs and having consented to a decree for a sale of the assets, the proceeds to be distributed among the stockholders, are precluded from showing in a subsequent suit against another corporation that the dissolution was brought about through fraud of such other corporation, as one of the stockholders, acting through its own directors.

3. Preferred stockholders agreed that if defendant, another corporation, would guarantee six per cent. dividends on their stock, they would consent to a reduction of their dividends from seven per cent., as fixed by the charter. The stockholders' agreement required defendant's agreement to be endorsed upon new stock certificates to be exchanged for old certificates and to be deposited with a trust company.—*Held*, that, since the trust company was bound to receive the new certificates and surrender the old, it must be assumed, in the absence of proof, that the trust company accepted the new certificates from the corporation issuing them, with the form of agreement adopted by defendant and consented to by the other corporation, to carry out the agreement of endorsement, and as a sufficient endorsement under the agreement, that the new certificates were accepted by the stockholders as being properly endorsed, that the old certificates were surrendered without objection, and that the previous negotiations cannot be resorted to, to give the endorsed agreement any operation different from that expressed on its face.

4. Defendant corporation's agreement, "guaranteeing" payment of a fixed dividend on stock of another corporation, did not constitute a guaranty, but an independent contract, where it was made in a readjustment of such other's corporation's affairs, in which defendant was interested. defendant receiving substantial independent consideration on a consummation of the whole plan.

5. A stockholder's rights do not necessarily depend on the issue or holding of the stock certificate itself, but are rights of which the certificate is the evidence or muniment of title, the certificate not being the property itself.

6. A stockholder's rights, evidenced by a certificate, include the personal rights inherent in a stockholder as a member of the corporation, as the right to attend meetings, vote, &c., the property right to share in the dividends and in distributions of assets, and the rights conferred by law to protect such personal and property rights.

7. Dissolution of a corporation terminates a stockholder's personal, but not his property, rights.

8. Defendant corporation guaranteed payment of a fixed dividend on stock in another corporation, so long as the certificate of stock should be "outstanding."—*Held*, that a dissolution of such other corporation, and a decree distributing its assets, terminated a stockholder's right to dividends, under the agreement, the term "outstanding," as used, meaning "lawfully outstanding," and the certificate remaining effective only for the purpose of production as evidence of the holder's right under the decree of distribution.

9. Defendant corporation, by guaranteeing payment of a fixed dividend on stock in another corporation, in which it held stock, so long as the guaranteed certificates should be outstanding, did not impliedly agree that it would not exercise its statutory right as a stockholder to vote to dissolve such other corporation, because a dissolution might terminate its liability under the agreement.

10. A claim for breach of contract by a corporation is chargeable against its assets on dissolution.

Heard on amended bill, answers, replications and proofs.

*Mr. James E. Howell*, and *Mr. Bijur* and *Mr. Engelhard* (of the New York bar), for the complainants.
*Messrs. Coult & Smith*, solicitors.

*Mr. Richard V. Lindabury*, and *Mr. Levi Mayer* (of the Chicago bar), and *Mr. H. C. Deming* (of the New York bar), for the defendants.
*Messrs. Lindabury, Depue & Faulks*, solicitors.

EMERY, V. C.

The Standard Distilling and Distributing Company, a corporation organized under the General Corporation act, the corporate defendant in this suit, has been dissolved by the voluntary action of its stockholders under the act and is now being wound up under the act by the individual defendants, the directors at the time of the dissolution. The complainant Bijur, as a creditor of the Standard company, filed this bill on behalf

of himself and other creditors, for the adjudication of his claims and their payment out of the assets of the corporation. By stipulation of the defendants, made on the application for a preliminary injunction restraining the distribution of the assets pending the adjudication of complainant's claim, the bill, being sworn to, was taken as a presentation of complainant's proof of claim, and an order was made in the cause that it be so taken. Complainant's claim against the Standard company is based on written agreements endorsed by or on behalf of the Standard company, on the certificates of first preferred and second preferred stock of another corporation called the Spirits Distributing Company. These certificates of stock were issued under date of April 13th, 1899, and the endorsement on the certificate for first preferred stock is in the following form:

"For good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned hereby guarantees and agrees to pay to the holder of record of the within certificate, so long as said certificate shall be outstanding, but not to exceed the present unexpired term of the period for which said Spirits Distributing Company is incorporated, one and one-half per cent. dividend on the fifteenth days of January, April, July and October in each year, beginning with the year 1899, on every share of First Preferred Stock of said Spirits Distributing Company represented by the within certificate.

"STANDARD DISTILLING AND DISTRIBUTING COMPANY,
"By N. E. D. HUGGINS,
"*Secretary.*"

The endorsement on the certificates for second preferred stock is similar in form, except that the payments are "one per cent. dividend on the fifteenth days of April and October in each year, beginning with the year 1899."

Complainant Bijur, since April, 1899, has been the owner of four hundred and four shares of first preferred, one certificate for fifty-four shares issued to one Arnold, and one certificate for three hundred and fifty shares issued to one Liebman, and also the owner of one thousand one hundred shares of second preferred stock in a single certificate, issued also to Liebman; Arnold & Liebman are still the holders of record, but it is admitted by the pleadings and at the hearing that the stock standing on the record in their names always has been, and is now,

owned by the complainant Bijur, who has the certificates in his possession and has also assignments of their interests and is entitled to whatever may be due or become due on the certificates. The other complainant, Windmuller, who was allowed to intervene in the suit, is the owner and holder of record of ten shares of the first preferred and ten shares of the second preferred stock. Payments were made by the Standard company to the complainants as owners or holders of the certificates, according to the terms of the endorsement, from the date thereof up to but not including the payments of April 15th, 1902. For the payments due, or claimed to be due on that date (about $1,731), suit was brought against the Standard company in the supreme court of the State of New York, by the complainant Windmuller, on his own behalf and as assignee of Liebman, and judgment recovered, which judgment was affirmed on appeal to the appellate division. *Windmuller* v. *Standard, &c., Co., 106 App. Div. 246,* and also by the court of errors and appeals, *186 N. Y. 572 (November, 1906).* The present claim of complainant's bill, which was filed September 30th, 1905, is based on the payments alleged to be due from and including July 15th, 1902, to the filing of the bill, and the payments subsequently accruing and to accrue up to the year 1946, the period for which the Spirits Distributing Company was incorporated (fifty years from January 6th, 1896), expiring on January 6th, 1946. The situation as to the liability of the Standard company to the holders of certificates, upon the agreement endorsed, is changed, or claimed to be changed, since April 15th, 1902, by reason of the dissolution of the distributing company by vote of its stockholders, and proceedings for that purpose taken under the act, beginning with a resolution of the directors advising dissolution, passed December 27th, 1901. The formal regularity of these statutory proceedings for dissolution is not disputed, and this company was dissolved on June 2d, 1902. Two days later, and on June 4th, 1902, the two complainants, together with Arnold, filed a bill in this court, as the holders and owners both of the first and second preferred stock, against the Spirits Distributing Company and its directors at the time of the dissolution, alleging the dissolution of the company by the proceedings taken,

and praying, for reasons stated in the bill, the appointment of a receiver, other than the directors, to wind up the affairs of the company. In this cause a decree was made on July 8th, 1902, the complainants in the cause consenting to it, for the sale to a corporation called the Distilling Company of America, of all the assets of the Spirits Distributing Company of every kind and description, for $1,243,538.80. It was further declared by this decree that this sum constituted the total assets for distribution among the shareholders of the distributing company, less liabilities, which were fixed at $209,910.03, leaving for actual distribution $1,033,628.77, or $82.69 for each of the first preferred shares of the company, which were by the charter of the company entitled to be first paid the par value of their shares before any distribution on the second preferred or common stock. And it was ordered by this decree of July 8th, 1902, that the trustees (the directors at the time of the dissolution being by the order continued as trustees) forthwith make distribution among the first preferred shareholders of this sum, according to their respective holdings, as set out and determined in the order itself, including Arnold for Bijur as owner of fifty-four shares first preferred stock, Liebman for Bijur as holder of three hundred and fifty shares first preferred and one thousand one hundred second preferred, and Windmuller as holder of ten shares first preferred and ten shares second preferred stock. The payments, however, were not required to be made by the trustees except to such stockholders as should present their certificates of first preferred stock, and permit the endorsements of the payment of the dividend to be made thereon. The further direction was made

"that the distribution of the assets of the Spirits Distributing Company herein provided for is intended to be and is a final distribution of all the assets of the said corporation of every kind among its shareholders."

This decree for a final distribution of assets among all shareholders entitled was made to carry out the leave reserved by a previous order made July 2d, 1902, when, after the complainants had accepted the offer of purchase, the cause was directed to stand over for the purpose of giving notice to the stockholders of record, not represented in court, and by this order of July 2d,

1902, special leave given on the final acceptance of the offer, to apply at once for the orders and decrees necessary to carry the same into effect, and for a decree of final distribution of the assets of said Spirits Distributing Company among the parties entitled thereto. This decree of July 8th, 1902, consented to and procured by complainants, was not appealed from, and must stand as in substance and effect a decree for the payment of a definite sum fixed as complainants' share of the assets of the distributing company on dissolution.

Complainants do not appear to have tendered or presented their certificates of stock to the trustees for the receipt of dividend, under this decree, from the assets of the distributing company. The present claim against the Standard company on its agreement endorsed on the certificates, is based on the view that notwithstanding the dissolution of the Spirits Distributing Company, their claim against the Standard company on its agreement is still a continuing claim, and will continue until the time expressly fixed as limiting the period of its liability, viz., the time for which the distributing company was incorporated, January, 1946. This claim is, by the bill, based—*first,* on the construction of the agreement, which, it is insisted, was not made to depend upon the existence of the distributing company so that the certificates are still "outstanding" without regard to the dissolution; and *second,* because, if dependent on the existence of the company, the dissolution was fraudulent and void as against complainants, and of no effect for the reason that it was brought about unlawfully and in fraud of complainants and of their rights under the certificate. The resolutions for dissolution passed in December, 1901, are attacked because not honest, but in the interest of the Standard company and of the Distilling Company of America, which together, as owners of nearly all of the stock, preferred and common, of the distributing company, controlled the latter in its interest and dissolved the company for the purpose of terminating liability under the agreement. The further ground of fraud alleged is that the three companies interested in the termination of the contract were governed and controlled by the same or common directors, which seems to be claimed as of itself making the proceedings of the directors for

dissolution fraudulent against the minority stockholders. The rule allowing stockholders of a company the option to avoid contracts or agreements made by common directors, on behalf of both companies, and which is applied in proper cases where the contract, finally binding the company and all its stockholders, is made through the directors alone, has no application to the action of directors in those statutory proceedings where the final action is that of the stockholders themselves acting, as they are entitled to act, in their individual rights and, if they choose, according to their individual interests. In *Colgate* v. *United States Leather Co., 73 N. J. Eq. (3 Buch.) 72 (1907),* I examined this question with reference to the statutory proceedings in the merger of corporations. This case is now pending in the appellate court. Substantially the same view was taken in reference to the rights of the stockholders in voting upon the dissolution now complained of by Judge Kirkpatrick in a suit brought by the complainants and Arnold against the Standard company and the Distilling Company of America, the record of which has been offered.

Nor has the charge of fraud in the passage of the resolution been at all made out. On the contrary, the evidence of the witnesses called by complainant on this hearing to testify in relation to the passage of the resolution for dissolution disproves the charge, and on the hearing and in the briefs the evidence mainly relied on to support the charge is that of the reports of the several companies and the financial condition of the company as inferred from these reports. These statements do not justify such inference. But as to all of the objections to the dissolution of the distributing company, based on the alleged fraud of the Standard company as one of the stockholders, acting through its own directors, I think the complainants are concluded by the bill and proceedings in their own suit in chancery above set forth, in which they accepted the dissolution, took proceedings to carry it into effect and procured a final decree distributing its assets among all its stockholders, including as well the Standard and distributing company as themselves. The decree is set up in the answer as *res adjudicata,* and it must therefore be given full effect on all the matters foreclosed by it. The

claim of complainants against the Standard company must therefore depend upon the contract, and this is the ground upon which the claim is mainly placed by the bill, the allegation of fraud in the proceedings for dissolution being set up apparently only as an alternative answer or basis of relief, in case the contract be construed as terminated merely by the dissolution of the distributing company. *Paragraph 7 p. 11.* Construing the contract, the complainants claim that the contract must be construed solely by its terms, and that the certificate is still "outstanding," within the meaning of the agreement, and that in the absence of any express provision to that effect, the dissolution of the company does not of itself terminate the contract. The defendants, upon this branch of the case, the construction of the contract, claim that the contract itself contemplates payment of the dividends only during the existence of the company, and that by the dissolution of the company, the certificate ceased to be outstanding. And as a further defence upon the continuance of the claim for dividends after dissolution and affecting the construction of the contract in this respect, they set up that the agreement, in the form signed, was the result of, and intended solely to carry into effect, prior negotiations (through one Eicks, an intermediary promoter), to which the distributing company and the Standard company and their individual stockholders, including complainants, were parties. The following facts in relation to these negotiations appear by the undisputed evidence. In these negotiations the stockholders' agreements (signed by the complainants on their part, along with the other stockholders), described and referred to the proposal of the Standard company as one by which it would

"guarantee the payment during the existence of the said Spirits Distributing Company of a dividend of one and a half per cent. upon the 15th days of January, April, July and October in each year, upon $1,250,-000 of said first preferred stock, or so much thereof as may be outstanding from time to time."

The stockholders' agreement recited, among other things, that in consideration of this guarantee, they were willing on their part to consent to the reduction to six per cent. of the dividend

on their stock (fixed by the original charter at seven per cent.). This reduction was one of the features of the readjustment. As to the form which the contract of the Standard company thus referred to should assume, the stockholders' agreement further provided that the new certificates of stock (to be exchanged for the old certificates)

"shall have endorsed thereon the agreement of said Standard, &c., Co. to pay to the holder of said first preferred stock a dividend of one and a half per cent. upon the par value thereof, on the fifteenth days of January, April, July and October in each year." &c..

and that upon receiving certificates so guaranteed, the Manhattan Trust Company (the depositary of the stock) was authorized to cancel the old certificates of stock deposited with the trust company under the agreement, and surrender them to the distributing company.

. The stockholders' agreement was ratified by the stockholders, including complainant Bijur, who had, however, procured an injunction in a suit brought by one Pronick against carrying out an amendment to the charter of the Spirits Distributing Company, which was also a feature of the adjustment. This injunction, as he says on the hearing in this case, was released upon the matter being adjusted in a way satisfactory to him, and he then deposited his stock and took the new stock. The form of the agreement of the Standard company actually endorsed on the new certificates differs from that given in the stockholders' agreement in this respect, viz., instead of following the precise language of the agreement,

"to pay during the existence of the Spirits Distributing Co. a dividend of one and a half per cent., &c., on every share of first preferred stock represented by the within certificate, or so much thereof as may be outstanding (or provided the same be outstanding),"

the agreement is

"guarantees and agrees to pay to the holder of record of the within certificate, so long as said certificate shall be outstanding, but not to exceed the present unexpired term for which the company is incorporated."

The above facts relating to the matter of the form of the agreement as originally proposed and finally executed are undisputed. How the form in question came to be adopted does not appear, but inasmuch as under the agreement the trust company was charged with the duty of receiving the new certificates and surrendering the old ones, it must, in the absence of proof, be assumed that the trust company accepted from the distributing company the new certificates with the form of agreement adopted, as the form adopted by the Standard company and consented to by the distributing company to carry out the agreement of endorsement, and as a sufficient endorsement under the agreement. And it must also be assumed that the certificates so endorsed were accepted by the stockholders (including complainants) from the trust company as having endorsed thereon the agreements to which they were entitled, and which they were bound to receive under the agreement, and that without objection from any stockholder the old certificates were surrendered by the trust company on the delivery of the new certificates.

Under these circumstances, my view is that the previous negotiations cannot be resorted to for the purpose of giving to the endorsement in question any construction or operation different from that expressed in the agreement itself finally delivered, and that the parties on both sides must stand on the contract as finally executed and accepted. The right to resort to prior negotiations for the purpose of qualifying, by circumstances *ultra* the contract, the terms of the contract by construction or otherwise is sometimes allowed under special rules relating to contracts of guaranty, and on the ground that a guaranty is a secondary liability which in such cases arises only on the whole circumstances of the case as proved, and cases are cited by counsel which authorize such evidence. But as bearing on the question whether these prior negotiations can be resorted to for the purpose of controlling the contract in the present case, it is proper further to add that the Standard company, although referred to as guarantor, in this one feature of the plan of adjustment—the endorsement of the certificates—really occupied the position of an independent contractor, when the entire scope of the negotia-

tions is considered, and it received consideration for the contract of guaranty, which was only one of the contracts made in a transaction which was a readjustment of the financial condition of the distributing company, in which the Standard company had an interest. On the consummation of the whole plan, it received substantial independent consideration, which was sufficient legal basis for the contract in question considered as an independent and original contract, and the contract was in form made not as a contract merely of guaranty, but in the words "guarantee and agree to pay." The contract in question was, in the *Windmuller Case* in New York, above referred to, construed to be such original contract of payment, and not a mere contract of guaranty, and the whole transaction was held by that court to be "in reality only a method of paying part of the price which the Standard company was willing to expend for the acquisition of the controlling interest which it sought." It was therefore held not to be *ultra vires* as a mere guaranty.

The right of the complainants to recover from the Standard company dividends after April 15th, 1902, depends, therefore, in my judgment, solely on the construction of the contract for payment endorsed on the certificates, and on the undisputed facts above stated the precise question is whether, after the dissolution of the company and the final decree for distribution of its assets to the shareholders, including complainants, and made in the suit instituted by them for that purpose, the certificates are, within the meaning of the contract, "outstanding." The solution of this question involves some consideration of the nature of a certificate and its relation to the shareholder's rights in a company. The shareholder's rights in the company of which he is shareholder are not necessarily dependent on the issue or holding of the certificate itself, but are rights of which the certificate is the evidence or muniment of title, and so far as relates to the stockholder's rights in the company, the certificate is not itself the property. *2 Thomp. Corp.* § *2348; Low. Trans. Stock* § *109.* The rights of the stockholder evidenced by the certificates are all comprised in two classes—*first,* the personal rights inherent in a stockholder as a member of the corporation, being the right to attend meetings, vote and the

like, and including all personal rights as member, and *second,* the property rights, which are the rights to share in the dividends of the corporation and in the distribution of its assets. These rights, with those conferred by law, as incidental solely to their protection, comprise, I think, all the rights of the stockholder and the certificate of stock is, as between the shareholder and the company, and all its other shareholders, the evidence of this membership and right to share in the property and assets. A dissolution of the corporation terminates those rights of a shareholder which are merely personal to him as a member, but does not terminate his property right in the assets. It has, however, been held by high authority, which has never been questioned, that on dissolution, the title evidenced by the certificate becomes merely an equitable right to a distributive share in the funds, and that the stockholder can no longer convey any *legal* title to his stock by the mere assignment of the certificate. *Ang. & A. Corp. (10th ed.) 779; James* v. *Woodruff, 10 Paige 541; affirmed on appeal, 2 Den. 574 (1845).*

Taking this to be the true nature and scope of the certificate, as I think it is, the question of construction is narrowed to this: In view, *first,* of the dissolution of the company which destroys all membership and rights of membership, and *second,* of the final decree of a court of equity distributing the assets of the corporation, adjudicating the property rights of the shareholder and decreeing payment to the complainants of specified sums of money as their proportionate share of the assets, can the certificates be now said to be "outstanding?" This must be taken to mean "lawfully outstanding," and for what lawful purposes is the certificate now outstanding? By the decree of distribution giving complainants a definite sum out of the assets, the general right to share in those assets, evidenced by the certificate, has been merged and ended, and no further right to the assets continues to exist under the certificate. The sole purpose for which the certificate now exists is its production to the trustees, as evidence of the right to receive the money adjudicated to complainants by the decree.

The trustees, by the decree of the court, now hold a fixed sum in special and direct trust for the complainants, in satisfaction

of the general property right evidenced by the certificate while lawfully outstanding against the company, and this requirement of production for endorsement of payment cannot be considered as in any sense creating by the decree itself a situation which continues the certificate as "outstanding," within the meaning of the agreement.

Suppose the Standard company had endorsed the bonds instead of the stock of the distributing company, agreeing to pay interest on each bond so long as said bond is "outstanding," such liability to pay interest would continue so long, and to the extent interest was due on the unpaid principal, and after, as well as before, the principal became due. But should judgment be recovered for the principal when due, and the money be paid into court on writ of execution, could the bond be then said to be "outstanding," merely because the holder declined to apply for the money in court and retained the bond? When merged and extinguished by the judgment and its payment, the bond is no longer lawfully "outstanding." The decree of distribution was in fact and in form a judgment in favor of the shareholder for the amount due on his certificate, and the direction to the trustees to pay out of the moneys in hand the amount adjudicated to the complainants was an execution in their favor, and so far as the distributing company and its shareholders are concerned the certificate is certainly from that date no longer outstanding. As a matter of construction of contract, therefore, I conclude that the complainants have no claim under the agreement for any payment of dividends after the dissolution and decree of distribution.

In the complainants' brief a liability to pay continuing after dissolution and distribution was also pressed on the ground— *first,* of a supposed obligation of the Standard company not to exercise its right as shareholder in order to dissolve the distributing company, implied by law from the terms of the agreement, and *secondly,* because of an estoppel against denying the continued existence of the company, based on equities claimed to arise from all the circumstances of the case.

The *first* ground depends on the construction of the contract itself, and there is no reason why the principle, *expressum facit cessare tacitum,* should not apply to a contract of this kind. The

limit of time expressly agreed on by the parties for the payment
of dividends on the shares represented by the certificates was, "so
long as the certificates are outstanding." The statutory right of
a shareholder to vote upon the question of dissolution existed at
the time the contract in question was made and accepted, and
the contract in its present form must be taken to have been made
in contemplation of it. An obligation, from the nature of the
contract itself, that the contractor will not exercise such inde-
pendent right because of its possible effect as terminating the
contract if construed according to its terms, cannot be implied
by law. Several of the cases cited upon the point of implied
obligations are those of courts where the dissolution of a cor-
poration is held to have the effect of so terminating contracts for
employment or like continuing contracts, that no action against
the corporation for damages for breach of contract exists, and
these courts have applied the doctrines of implied obligation or
of equitable estoppel in these cases, where the act of dissolution
was that of the contractor itself, and was inequitable. We have
not adopted this doctrine that the mere dissolution of the con-
tracting company itself dissolves its continuing contracts, and
under our law the claim for damages for breach of the contract is
chargeable on its assets. *Spader* v. *Mural Dec. Co., 47 N. J. Eq.*
*(2 Dick.) 18 (Chancellor McGill, 1890)*; *Bolles* v. *Crescent*
*Drug Co., 53 N. J. Eq. (8 Dick.) 614 (Vice-Chancellor Reed,*
*1898)*, approved and followed in *Rosenbaum* v. *Credit System*
*Co., 65 N. J. Law (36 Vr.) 255 (Court of Errors and Ap-*
*peals, 1898)*. Had the Standard distilling company trustees
set up the dissolution of the Standard company itself as a de-
fence to an action on its contract, these cases on estoppel cited
would be applicable, if the rule were here in force, that the dis-
solution itself ordinarily or generally terminated a contract
which on its face did not refer to the dissolution, but which
would have continued had there been no dissolution. In this
case the question is the altogether different one whether, by its
own terms as to continuance, the contract has not terminated,
and if so, then whether any different or other time for its ter-
mination can be fixed, by applying the doctrine of implied obli-

gation to affect the period of termination fixed by the terms of
the contract.

As to the second ground set up in the briefs, the estoppel to
deny the continued existence of the distributing company, the
facts relied on to raise the estoppel are the same as those relied
on to sustain the charge of fraud in the dissolution of the dis-
tributing company which I have held not to be sustained.

I will advise a decree dismissing the bill.