The complainant sues for certain 50 shares of the stock of the defendant United Conclave Building and Loan Association, now in liquidation. The shares had originally been issued in 1922 and 1924 to Jacob Fischel. In 1937, the Association issued in their stead, new certificates in the name of Federal Trust Company. On July 25th, 1938, the Trust Company sold the stock to complainant and delivered to her the certificates which it held.
A stock certificate is a muniment of title; it is evidence, as between the holder thereof and the corporation, that the person named therein is the owner of the number of shares stated *Page 25 
in the certificate. Bijur v. Standard Distilling, c., Co.,74 N.J. Eq. 546 (at p. 556); 78 N.J. Eq. 582. The certificate, in the hands of a bona fide purchaser for value, is even stronger evidence than in the hands of the original holder, for equities which might affect the latter do not touch the innocent purchaser. 18 C.J.S. 724. In the instant case, the evidence of the certificate that the Trust Company was the owner of 50 shares of stock in the Association is uncontradicted. There is a suggestion that the Trust Company held the stock only as collateral security, but there is no proof to support the suggestion. It is plain then that complainant in 1938 became owner of the shares by purchase from the Trust Company. Defendants argue that she is estopped or is barred by laches from asserting her title. The only basis for this contention is that complainant failed to notify the Association of her purchase, or to have the shares transferred on its books.
Mr. Fischel and Mr. Johnson, the secretary of the Association and who was the person most familiar with its affairs, both died in 1939. The Association went into voluntary dissolution in the summer of 1941. About that time, Mr. Fischel's widow wrote the Association that it had come to her attention that Mr. Fischel was the holder of certain certificates, the numbers of which she listed and which included those now in dispute. Mr. Katz, who was secretary to the trustees in dissolution, looked into the matter. In the Association's safe he found the old certificates in the name of Jacob Fischel, without any endorsement of assignment. He also came across in the certificate book the stubs showing that those shares had been transferred to the Trust Company and that new certificates had issued accordingly. The ledger in which the Association kept its account with each member still named Fischel, and not the Trust Company, as owner but there had been no entries in the account since the issuance of the certificates to the Trust Company. Mr. Katz jumped to the conclusion that the Trust Company held the stock merely as security. On October 6th, 1941, he wrote the Trust Company: *Page 26 
"Our records show that at one time deceased Jacob Fischel had several certificates pledged with your bank as collateral for a loan. Eventually these certificates were exchanged for new certificates in the name of the Federal Trust Company. * * * Please check your records and inform me whether or not you hold certificates of this association, as we are exchanging them for new liquidation certificates."
The Company immediately replied, "We do not hold any certificates of your Association in the name of Federal Trust Company in which Jacob Fischel originally had an interest." It is not surprising that the Trust Company's letter was not more informative, as the Company had sold the stock three and one-half years earlier. The junior officer who wrote the letter was doubtless ignorant of the transaction and merely satisfied himself that his Company, when he wrote, did not hold the stock.
Mr. Katz next wrote the attorney for the Fischel estate that Fischel's certificates had been replaced by new certificates made out to the Trust Company. "Evidently they were pledged with them at one time. I have communicated with the Federal Trust Company and they state they do not have any certificates pledged with them at the present. I suggest you contact them and try to trace the matter to the release of the certificates by them."
In March, 1942, the trustees in dissolution sold a parcel of real estate to New Deal Realty Improvement Company, and accepted in part payment the shares in question, which the Improvement Company had bought from Fischel's administratrix the previous month. When title was closed, the Improvement Company did not, of course, deliver stock certificates, since the Fischel certificates were already in the possession of the trustees and the Trust Company's certificates, unknown to the other interested parties, were held by complainant.
The complainant had long been a member of the Association, owning shares which are not in controversy. At the annual audits of the Association's books in 1940 and 1941, statements were sent to her, listing these other certificates, the amount paid in on them, c., and asking her if the account *Page 27 
was correct. The shares she had bought from the Trust Company were not mentioned. The notices were mailed to complainant in care of the National Newark and Essex Bank, which held her stock as collateral. Whether she received the inquiries does not appear, nor whether she replied. In July, 1942, when the trustees were about to pay the first liquidating dividend, complainant's husband went to the Association's office with all her certificates, including those that she had bought from the Trust Company. This was the first information the trustees had that she claimed the shares.
Complainant's failure to notify the Association that she had acquired the shares does not give rise to an estoppel or constitute laches which prevents her from asserting title against the Association. The complainant did not know Fischel, or his administratrix, claimed an interest in the stock. The trustees had actual knowledge that certificates had been issued to the Federal Trust Company. When the Trust Company in October, 1941, advised that it did not then hold the certificates, the trustees apparently assumed that the certificates had been returned to Fischel and had been lost by him or by his administratrix. This assumption, rather than complainant's silence, is the immediate cause of their predicament. The trustees considered taking a bond to secure themselves against such an event as has actually happened; but they waived the bond.
There are many cases where a corporation which deals with the record owner of stock is protected against claims of an unregistered assignee, such as complainant. Campbell v. PerthAmboy, c., Association, 76 N.J. Eq. 347. The Association kept no stock ledger or stock transfer book. Its primary stock record is its certificate book, with stubs showing transfers and certificates issued. The record owner after 1937 was Federal Trust Company, not Jacob Fischel. The recognition given by the trustees to the assignee of the supposed Fischel interest is not a defense against the Trust Company's transferree.
There will be a decree for complainant but since her failure to have her stock transferred on the Association's books was a contributing cause of the litigation, no costs will be taxed. *Page 28