STATE OF NEW JERSEY, PLAINTIFF-CROSS-APPELLANT AND RESPONDENT, v. UNITED STATES STEEL CORPORATION, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.

Argued January 19, 1953—Decided March 16, 1953.

*Mr. Josiah Stryker* argued the cause for the defendant-appellant and cross-respondent (*Messrs. Stryker, Tams & Horner,* attorneys).

*Mr. Emerson Richards* argued the cause for the plaintiff-cross-appellant and respondent (*Mr. Theodore D. Parsons,* Attorney-General, attorney).

The opinion of the court was delivered by

OLIPHANT, J.  This is the appeal of a judgment resulting from a proceeding instituted under the Escheat Act, *N. J. S. A.* 2:53–15 *et seq.,* as amended by *L.* 1951, *c.* 304, *p.* 1093, and was certified here pursuant to *Rule* 1:5–2 on petition of defendant-appellant, 10 *N. J.* 21 (1952).  The cause was heard in the Superior Court, Chancery Division, before Judge Goldmann, the judgment of which court escheated certain preferred and common stock of the defendant-appellant, the whereabouts of the owners of which had been un-

known to it for 14 years prior to the institution of the proceeding, and the dividends on the stock payable more than 14 years prior to the commencement of the proceeding; but the judgment below determined that the dividends declared and payable less than 14 years before the suit was instituted were not escheatable under the act.

Two questions are presented on the main appeal. The first relates to the sufficiency of the notice given in this proceeding as required under *N. J. S. A.* 2:53–21, as amended by *L.* 1951, *c.* 304. The second question relates to whether the mailing of the dividend checks by the appellant pursuant to certain dividend orders filed by the claimants, was sufficient to transmute the right to payment of the dividends into a claim on the said checks with the result that the claims would be barred by the statute of limitations and therefore not be escheatable.

These proceedings were instituted on November 3, 1948, under the provisions of *L.* 1946, *c.* 155, *p.* 713, then in effect. The defendant-appellant filed an answer as permitted by the statute and the proceeding was then stayed pending the final determination in *State v. Standard Oil Co.,* 5 *N. J.* 281 (1950).

On June 28, 1951 the plaintiff-respondent obtained an order of publication fixing the time and place of the final hearing, in the form and conditions for publication of notice required by the statute, *N. J. S. A.* 2:53–21 (section 7 of the act of 1946). The order fixed the date of hearing as September 7, 1951, and further required that the notice of the time and place thereof should be published three times a week in a newspaper in general circulation in Mercer County, and directed that any person claiming any interest or ownership in the stock should file his claim with the court not later than five days prior to the date fixed for hearing. The order was consistent with the requirements of the 1946 act as to the necessary notice. The Legislature in the interim had passed *L.* 1951, *c.* 304, which act did not become effective until it was approved by the Governor on July 13, 1951. The important difference between the amend-

ment and the existing act insofar as the question here presented is that the new act required the claims to be submitted to the court not later than three days prior to the date fixed for hearing. The effect of the amendment was to give two additional days in which to file the claims.

Notice and publication was had under the order of June 28, 1951, without any objection from the defendant-appellant here with respect to the possible application of the 1951 amendment, and it further expressly consented to two orders of the court, one made September 13, 1951, extending the time for filing claims until the further order of the court and expressly removing the obligation, if any, of the defendant with respect to any claims paid during the period from the operation of *N. J. S. A.* 2:53–15 *et seq.* On November 13, 1951 a further order was made extending the time for the presentation of claims until December 1, 1951. As the result of the notice given and the orders of extension the Steel Corporation paid to claimants $159,319.71 out of a total of $342,790.82 in dividends listed unclaimed, 52 of the original 90 shares of unclaimed common stock, and 4 of the original 17 shares of unclaimed preferred stock.

As to the question of notice, the appellant argues that if the amendment, *L.* 1951, *c.* 304, is valid, then the notice given in the case at bar is invalid for failure to comply with such amendment. The gravamen of appellant's complaint is that the 1951 act was in effect at the time the notice was given and is therefore applicable to this case, and if applicable the claimants were entitled to two additional days in which to file their claims prior to the date of hearing, since the amendment fixed the last date for filing claims as three days before the hearing rather than five days as fixed in the original act. The appellant concedes the original Escheat Act, *L.* 1946, *c.* 155, was valid.

We are in accord with the conclusion of the trial court that the order of June 28, 1951 met the requirements of the statute at the time the order was made and that the question of the application of a particular statute on procedure is determined at the point in the proceeding at which

the existing law is applied, and that the time for decision as to applicability is when the order required by the statute for the publication and posting of notices was made, which was some three weeks prior to the effective date of the amendment when it was finally approved by the Governor on July 13, 1951.

The ordinary rule of construction is that a procedural statute is to be construed prospectively unless the legislative intent clearly indicates that a retroactive operation is intended, and so it has been held that the steps already taken, the pleadings, and all things done under the old law will stand unless an intent to the contrary is plainly manifest. Pending cases are only affected by general words as to future proceedings from the point reached when the new law becomes operative. 2 *Sutherland Statutory Construction* (*3rd ed.*), *sec. 2212, p. 136; 59 C. J., sec. 701, p. 1174; Berkovitz v. Arbib & Houlberg, Inc., 230 N. Y. 261, 130 N. E. 288 at p. 290 (Ct. App. 1921). Cf. White v. Hunt, 6 N. J. L. 415 (Sup. Ct. 1798); Peacock v. Hammitt, 15 N. J. L. 165 (Sup. Ct. 1835).*

It is not clear by what right the defendant-appellant as the custodian of the properties in dispute can raise the question of lack of notice insofar as the individual claimants are concerned or how it has been prejudiced, in view of the fact that it on its own motion or order of September 13, 1951, expressly relieved it of any obligations to the claimants accruing under the Escheat Act. But assuming that such right possibly exists, then on the facts as they appear the appellant should be deemed to have waived such right: (1) by failing to move to amend the order of June 28, 1951, so as to conform to the new statute some time at or before the hearing date fixed in the order, and (2) by agreeing to the two orders extending the time for filing claims. *McSweeney v. Equitable Trust Co., 127 N. J. L. 299 (E. & A. 1941).*

Viewing the situation here presented as it exists on the facts without any regard to the specific notice provisions of the original statute or the amendment, it is quite ap-

parent that these claimants have received ample notice sufficient to meet the requirements of due process clause of the 14th Amendment of the Federal Constitution. The phrase "due process of law" formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights, and its asserted denial is to be tested, not as a matter of rule, but rather by an appraisal of the totality of the facts involved in the particular case. *Betts v. Brady,* 316 *U. S.* 455, 62 *S. Ct.* 1252, 86 *L. Ed.* 1595 (1942).

█ The rights of the claimants are not completely foreclosed by the present judgment of the court, because under *N. J. S. A.* 2:53–31 they may within two years after the filing of the said judgment apply to the court to reopen the judgment and "upon proof that they were without *actual knowledge* of such escheat proceedings, and of proof of ownership of such property or the right to possession thereof, the court may in its discretion reopen the decree and in the event that the aforesaid decree in part or in whole be revised or amended, the court may direct the State Treasurer to repay such part of the moneys received by the State Treasurer by reason of such decree," etc.

Finally, the order directing publication was entered in this cause before the amendatory act became effective and was valid when made, and was not invalidated by the subsequent legislation. Thus it would seem that the publication of the notice was proper even if the 1951 act is valid; consequently there is no need to discuss the validity of the 1951 act, inasmuch as the defendant-appellant admits the validity of the publication if the 1951 act is not applicable or invalid.

The second point of defendant-appellant is that all dividends for which checks were mailed by the defendant pursuant to dividend orders were paid by the mailing of such checks and thereafter the stockholders had claims on the checks and not for the dividends.

█ Prior to 1941 no dividend checks were mailed to stockholders except pursuant to a dividend order executed

and filed by the stockholder with the corporation, and after 1941 there was apparently mailed to the stockholders a form which requested the stockholder to fill it in and sign the attached order which upon receipt would be filed as instructions covering the mailing of future dividends. Although several different types of order forms and notices were used during the years in question, the following is a fair illustration of all:

."TO STOCKHOLDERS: Kindly fill in and sign the attached permanent order, and upon receipt of the same from you we will file it as your instructions covering the mailing of future dividends on your holding of Shares in the CAPITAL STOCK of the Corporation.
This, being a PERMANENT ORDER, covers all future dividends and will remain in force until further instructions are received.
RICHARD TRIMBLE, Treasurer.

Lehman & Bro.,
15,350    $73.48
PERMANENT DIVIDEND ORDER.
To the Treasurer of the UNITED STATES STEEL CORPORATION, 71 Broadway, New York City.

Please pay, by cheque on New York, to the order of ..... ......
..................... by mail to the following post office address
................. .............. . all dividends due, and which may hereafter be due, on all shares of the Capital Stock, Preferred and Common, of the United States Steel Corporation, now standing, and which may hereafter stand of record in my name on the books of the said Corporation, until this order shall be revoked in writing by me, or, in case of my death, by my legal representatives."

The trial court found as a fact that there is nothing in the dividend orders or forms of notice under consideration which could be construed as a positive agreement, 'or for that matter any agreement that the check would be received as payment." The common law rule is that a check or promissory note, either of the debtor or a third person, received for a debt, is not payment if not itself paid, except in cases where it is positively agreed to be received as payment. *Freeholders of Middlesex v. Thomas*, 20 *N. J. Eq.* 39 (*Ch.* 1869); *Weisberger v. J. G. Corporation*, 107 *N. J. Eq.* 61 (*E. & A.* 1930); *Condenser Service, etc., Co. v. Mycalex*

*Corporation of America,* 7 *N. J. Super.* 427 (*Law Div.* 1950); 70 *C. J. S., Payment,* § 24, *p.* 233.

The construction urged by the appellant would do violence to the intention of the parties. Obviously, the purpose of the inquiry as to the stockholders' addresses and the authorization to forward the checks to them at the given addresses was to insure delivery of the checks and to save the stockholders and the company the inconvenience of personal calls for the payment of the dividend. Certainly there was no agreement for the substitution of a new right of action either in debt or on the check in place of the stockholders' rights as *cestuis que trust* in the funds set aside from the general mass of corporation funds for the payment of dividends. *State v. Standard Oil Co., supra,* at *p.* 302. The rule of law was correctly applied in that decision and the fact that it had not been so declared by the courts at the time these dividend orders were mailed has no effect on its verity, efficacy or existence. *McDermott v. Paterson,* 122 *N. J. L.* 81, at *p.* 86 (*E. & A.* 1939).

No agreements for so substantial a change in the rights and equities of the parties can be fairly implied from the circumstances here presented. It is certain that such change was never within the contemplation of the parties; certainly not within the contemplation of the stockholders who undoubtedly considered the inquiry as designed to insure the delivery of the checks, not to alter the nature of the right of action. Indeed, no stockholders gave any thought to the possibility of the check being dishonored. Nothing short of an express agreement to accept the new obligation for the old would alter the character of the relationship. There is a trusteeship as to dividends which continued until the dividend is actually paid, unless the parties by agreement waive that relation in favor of another.

The State in its cross-appeal argues that the judgment of escheat entered below should include the unclaimed dividends, not only those declared 14 years or more prior to the institution of this action but also those declared within the 14-year period. *N. J. S. A.* 2:53–17 provides:

"Whenever the owner, beneficial owner, or person entitled to any personal property within this State, has been or shall be and remain unknown for the period of fourteen successive years, or whenever the whereabouts of such owner, beneficial owner or person, has been or shall be and remain unknown for the period of fourteen successive years, or whenever any personal property wherever situate has been or shall be and remain unclaimed for the period of fourteen successive years, then, in any such event, such personal property shall escheat to the State."

The term "personal property" as defined in the act, *N. J. S. A.* 2:53–15, includes:

"* * * moneys, negotiable instruments, choses in action, interest, debts or demands due to the escheated estate, stocks, bonds, deposits, machinery, farm crops, live stock, fixtures, and every other kind of tangible or intangible property *and the accretions thereon*, up until the time of the filing of the bill of escheat, but shall not mean and include real property or property in the custody of any court in this State, nor any personal property covered by chapter one hundred ninety-nine of the laws of one thousand nine hundred and forty-five." (Italics supplied.)

■■ We find no merit in the State's contention that the escheat of stock includes the unclaimed dividends within the 14-year period. The statute works a forfeiture and therefore must be strictly construed. *McNeely v. Woodruff,* 13 *N. J. L.* 352, 357 (*Sup. Ct.* 1833) ; 3 *Sutherland, Construction* (*3d ed.*), secs. 5603 and 5604. It is a well settled principle that escheat and forfeiture are not favored by the law, and any doubt as to whether property is subject to escheat is resolved against the State. 19 *Am. Jur.,* sec. 14, *p.* 387. There is nothing in the theory of definitive right to include, as accretions of the stock, dividends declared within the 14-year period and unpaid for want of knowledge of the stockholders' whereabouts. Dividends on stock constitute a portion of the accumulated surplus or profits of the enterprise allotted to the stockholders according to their several interests upon declaration of the dividend which becomes separate and distinct from the stock and ordinarily would not pass by the transfer of the stock by the stockholder unless the dividends were included in the contract. This is

so even as to dividends declared before the transfer but not payable until after the transfer. *Martindell v. Fiduciary Counsel, Inc.,* 133 *N. J. Eq.* 408, at *page* 415 (*E. & A.* 1943).

The Legislature could have provided for the escheat of dividends declared within 14 years, and the question is whether the Legislature intended to escheat such property. The legislative policy seems to be that before personal property can be escheated the owner or his whereabouts must be unknown for a period of 14 years, *N. J. S. A.* 2:53–17, and in the definition of personal property found in *N. J. S. A.* 2:53–15 the statute, *inter alia,* defines personal property to mean "stocks, bonds * * * *and* every other kind of tangible or intangible property *and* the accretions thereon." The effect is to define and distinguish "accretions" as personal property separate and distinct from the property upon which it is an "accretion." Thus, by the express terms of the act the dividends declared within the prescribed period of 14 years are not escheatable because the dividends declared within the 14-year period cannot be said to have remained unclaimed for that period.

When the judgment below was entered decision was reserved on appellant's application for a counsel fee until this court should pass upon the question in a cause pending before us, and jurisdiction was retained for this purpose in the event that a counsel fee should be sustained. In *State v. Otis Elevator Co.,* 12 *N. J.* 1, we determined that a counsel fee can be allowed in an action in escheat in a proper case, but where, as here, the defendant actively opposed the escheat, claiming title in itself, no counsel fee should be awarded.

The judgment below is affirmed.

HEHER, J. (concurring). I join in the affirmance of the judgment, and generally for the reasons expressed in the opinion of Mr. Justice Oliphant.

As to the subject matter of the State's cross-appeal, the unclaimed dividends declared within 14 years prior to the filing of the complaint herein, the statutory principle in-

voked raises a rebuttable presumption of abandonment where the subject personal property "has been or shall be and remain unclaimed for the period of fourteen successive years" (*N. J. S. A.* 2:53–17), and where the proceeding is grounded in this principle, unclaimed dividends declared within that period are not escheatable.

But, for the reasons stated in my dissenting opinion in *State v. Otis Elevator Co.*, 12 *N. J.* 1, I would not allow a counsel fee to the appellant custodian.

WILLIAM J. BRENNAN, JR., J. (dissenting in part). I dissent from the affirmance of the judgment as it relates to the State's cross-appeal. I think that the escheat of the stock should include therewith the dividends thereon declared within 14 years. Dividends on stock, whether declared before or within the 14-year period, are "accretions" in statutory contemplation. The majority, conceding this, and also conceding that "The Legislature could have provided for the escheat of dividends declared within 14 years," nevertheless holds that *N. J. S. A.* 2:35–15 is to be read as constituting "accretions" as an item in the catalog of escheatable items "separate and distinct from the property upon which it is an 'accretion,'" and that the condition to an escheat that the personal property "shall be and remain unclaimed for the period of fourteen successive years" is therefore applicable to an accretion. I cannot agree. The majority view is tenable only if we are to admit the existence of a redundancy in the statute. The clause immediately preceding the reference to accretions is "and every other kind of tangible or intangible property," which, accepting the majority interpretation, is embracive of accretions in existence over 14 years and would make wholly empty of significance the added "and accretions thereon." We should strive wherever possible to give substance and meaning to every word in a statute. That can readily be done here by reading the statute as it is clear to me the Legislature intended it to be read, that is, as saying that "stocks, bonds, deposits, machinery, farm crops, livestock, fixtures and every other kind

of tangible or intangible property" shall be escheatable if unclaimed for the period of 14 successive years, in which case, not the property alone, but as well "the accretions thereon" in existence at "the time of the filing of the bill of escheat," and without regard to the time when such accretions came into existence, are to be escheated with and as part of the property.

The impractical consequences which result under the majority's interpretation are illustrated by what is happening in this case. The stock goes over to the State under the judgment. Dividends declared as long ago as 1901 were unclaimed upon some of it. But only the dividends declared to 1934 escheat under the judgment. Those declared and unclaimed from 1934 to the time of the filing of the bill of escheat in 1948 remain with the custodian. The State and the parties must be put to the expense of further litigation (the State must decide whether to bring one action after the 14 years have elapsed as to the dividend last declared, or to bring several as the time runs as to one or some of them), and to what purpose? None suggests itself. In the absence of a very plainly indicated legislative intent to bring about this undesirable result we should not interpret the statute to produce it. I am convinced that not only is such intention not to be found in the language of the statute but that on the contrary the Legislature has plainly evinced its desire to avoid it.

The CHIEF JUSTICE and Justice JACOBS join in this dissent.

*For affirmance*—Justices HEHER, OLIPHANT, WACHENFELD and BURLING—4.

*For modification*—Chief Justice VANDERBILT, and Justices JACOBS and BRENNAN—3.