117 N.J. Super. 38 (1971)
283 A.2d 543
STATE OF NEW JERSEY, PLAINTIFF,
v.
NEW JERSEY NATIONAL BANK AND TRUST CO., A CORPORATION ORGANIZED UNDER THE LAWS OF THE UNITED STATES, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided October 27, 1971.
*40 Mr. Robert W. Dempsey, Deputy Attorney General, for plaintiff (Mr. George F. Kugler, Jr., Attorney General, attorney).
Mr. Stephen C. Carton for defendant (Messrs. Carton, Nary, Witt & Arvanitis, attorneys).
SEIDMAN, J.C.C. (temporarily assigned).
This is an escheat action under N.J.S. 2A:37-11 et seq., the subject matter of which is unclaimed personal property held by the corporate defendant, consisting of shares of stock (including stock splits and stock dividends), ordinary cash dividends, and cash in lieu of stock dividends. During the *41 course of these proceedings petitions were filed by claimants to portions of the property in question, and subsequently an order was entered by Judge Fritz adjudging the persons named therein to be the rightful and lawful owners of some of the shares of stock and cash in the hands of defendant.
What is left for determination is the escheatable status of the remaining unclaimed property. The parties have stipulated all pertinent facts and the issues have been submitted to the court for resolution. As framed by the State the questions are these:
"Is there any impediment existing to prevent the State from escheating each of the various types of property claimed in this litigation, and is there any limitation to the State's right of escheat imposed by the fact that the defendant's records show the last known address of the beneficial owner of the abandoned property to be in States other than New Jersey?"
The State contends that it can escheat all the property involved except where the last known address of the owner is in a state having an escheat law covering the type of property involved. The defendant concurs. In spite of the absence of apparent controversy between the parties, the court is obliged to determine the issues on the basis of existing law.
From the stipulated facts it appears that defendant institution was originally the Asbury Park and Ocean Grove Bank. Between October 1963 and April 1964 its name was New Jersey Trust Company; since then, except for a further change which occurred after the filing of this suit, it has been known as the New Jersey National Bank and Trust Company.
In 1961, as the result of a corporate reorganization, shares of new stock replaced existing shares at an exchange ratio of 5.1 to 1. Two years later, following a merger with the New Jersey Trust Company, the Asbury Park and Ocean Grove Bank stock was exchanged on a 1 for 1 basis for *42 stock of the New Jersey Trust Company. The merger also provided for the 4 for 1 exchange of New Jersey Trust Company of Long Branch stock. New shares of stock were issued in the name of the New Jersey National Bank and Trust Company in 1964. This, however, was a name change only and did not affect the proprietary rights of the shareholders. A 4 for 1 stock split occurred in 1967.
After the institution of these proceedings defendant corporation merged with the First Trenton National Bank, and its name was changed to the New Jersey National Bank. For every three shares formerly held, each shareholder received one share of stock in the new institution.
Three percent stock dividends were declared annually from 1963 through 1969. A 5% stock dividend was declared in 1969, payable January 2, 1970. Cash was paid in lieu of fractional shares in each instance. Regular cash dividends were paid from 1954 onward.
The parties agree that all original shares of stock sought to be escheated have remained unclaimed for 14 successive years next preceding the institution of this suit, and that the dividends (stock and cash) and cash in lieu of fractional shares have been declared or paid within that 14-year period.
Defendant's records reveal that the last known addresses of some of the stockholders involved are outside New Jersey, specifically, in California, Connecticut, Delaware, Florida, New York, Pennsylvania, Rhode Island, Virginia, District of Columbia and the United Kingdom.
N.J.S. 2A:37-13 provides that
Whenever the owner, beneficial owner, or person entitled to any personal property within this state, has been or shall be and remain unknown for the period of 14 successive years, or whenever the whereabouts of such owner, beneficial owner or person, has been or shall be and remain unknown for the period of 14 successive years, or whenever any personal property wherever situate has been or shall be and remain unclaimed for the period of 14 successive years, then, in any such event, such personal property shall escheat to the state.
*43 Whether the State's right of escheat is limited by the fact that the last known addresses of some of the beneficial owners of the unclaimed property are in states other than New Jersey presents no real problem. It is conceded that the controlling case is Texas v. New Jersey, 379 U.S. 674, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965), in which these principles were established:
1. Intangible personal property, such as a debt which a person is entitled to collect, is subject to escheat only by the state of the last known address of the creditor, as shown on the debtor's books and records.
2. Where there is no record of any address at all, the property is subject to escheat by the state of the debtor's domicile, provided that another state could later escheat upon proof that the last known address of the creditor was within its borders, if its law made provision for the escheat of such property.
3. Where the last known address is in a state which does not have an applicable escheat statute, the state of the debtor's domicile can escheat the property, subject to the right of the other state to recover it if and when its law made provision for the escheat of such property.
There is, of course, no doubt that New Jersey has the unquestioned right to escheat intangible personal property where the last known address of the owner lies within the State. All the property sought to be escheated in these proceedings is intangible. The stipulation of facts includes a concession that Pennsylvania and California have applicable statutes and, consequently, any claims New Jersey may have asserted to property of persons whose last known addresses are in those states are now abandoned and relinquished.
In its supplemental memorandum of law the State notes that the names of persons whose last known addresses were in the state of New York, as well as in California and Pennsylvania, were not included in the notice of publication. *44 Although the State is satisfied that California and Pennsylvania have appropriate escheat laws, it seems to be somewhat uncertain of the scope and effect of the New York statute. Acknowledging that it cannot escheat listed property in the names of persons whose last known addresses are in New York, because of the lack of notice to them, the State, nevertheless, according to its memorandum of law, "would appreciate and would agree to be bound by any guidance the Court may give concerning this property."
Notice of the escheat action must be given to the owner or person entitled to or having an interest in the personal property involved. N.J.S. 2A:37-18, 2A:37-19. Due process of law requires it. See State v. Standard Oil Co., 2 N.J. Super. 442 (Ch. Div. 1949), opinion supplemented 5 N.J. Super. 460 (Ch. Div. 1949), mod. 5 N.J. 281 (1950), aff'd 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951). In view of the fact that New York owners have not been notified of these proceedings, they cannot be affected thereby, so that there is no need to construe the escheat law of that state. The court cannot give an advisory opinion on the subject. In re Judges in Chancery, 101 N.J. Eq. 9 (Ch. 1927).
The remaining states of Connecticut, Delaware, Florida, Rhode Island and Virginia, as well as the District of Columbia, do not have escheat laws which appear to cover the property in question. Accordingly, New Jersey has a superior right to escheat the personal property of owners whose last known addresses are in any of those states, subject, of course, to the right of such state to recover the property if and when its law makes provision for its escheat. With respect to the United Kingdom, counsel have not brought to the attention of the court any applicable escheat law therein. In any event, it is not necessary to determine at this time whether or to what extent the rules stated in Texas v. New Jersey, supra, would be applicable where a foreign country is involved.
*45 As noted earlier herein, the court must determine the escheatability of the unclaimed personal property held by the corporate defendant, namely, shares of stock (including stock dividends), ordinary cash dividends, and cash in lieu of stock dividends. The pertinent statutory provision is N.J.S. 2A:37-11:
The term "personal property" as used in this article shall mean and include moneys, negotiable instruments, choses in action, interest, debts or demands due to the escheated estate, stocks, bonds, deposits, machinery, farm crops, live stock, fixtures, and every other kind of tangible or intangible property and the accretions thereon, up until the time of the commencement of the action for escheat, * * *. [Emphasis supplied]
1. Original shares of stock. There is no problem with respect to original shares of stock unclaimed for a period of 14 successive years next preceding the institution of this action, inasmuch as stocks are specifically included in the statutory definition of personal property.
2. Stock splits and exchanges. At various times over the years the stock of defendant bank or its predecessors has been either split or, when mergers occurred, exchanged for other shares on the basis of stated ratios. In some instances this has resulted in a proportionate increase in the number of shares held; in others, where there was an inverse ratio, such as 1 for 3, the number has been decreased. The inquiry is whether shares issued within the 14-year period by reason of exchanges or stock splits are subject to escheat where the original shares have been unclaimed for the statutory period.
It is universally recognized that a stock certificate is not to be confused with the shareholder's interest in a corporation. It is merely evidence or a muniment of title, and not the property itself. Bijur v. Standard Distilling & Distributing Co., 74 N.J. Eq. 546 (Ch. 1908), aff'd 78 N.J. Eq. 582 (E. & A. 1911); Laden v. Baader, 134 N.J. Eq. 24 (Ch. 1943), aff'd 135 N.J. Eq. 13 (E. & *46 A. 1944); Ward v. Jersey Central Power & Light Co., 136 N.J. Eq. 181 (Ch. 1945); Piechowski v. Matarese, 54 N.J. Super. 333 (App. Div. 1959). The shareholder's rights, evidenced by the certificate, are (1) personal  the right to attend meetings, to vote, and the like; and (2) property  the right to share in the dividends of the corporation and in the distribution of its assets. Bijur v. Standard Distilling & Distributing Co., supra. A stock split represents no real change in the position of the shareholder. More shares are issued by reducing par or stated value. There has been no distribution in any sense. In re Arens Trust, 41 N.J. 364, 375 (1964). The shareholder's interest in the corporation is exactly the same as it was prior to the split. No new rights have been created. The same is true of shares issued in exchange for those previously held. Even though this may have resulted from a merger of two institutions, with the resultant combination of assets, the shareholder's rights have been neither increased nor diminished. It follows, therefore, that if corporate shares of stock unclaimed for 14 years are subject to escheat, exchange or split shares issued thereafter should also be escheatable, even though the 14-year period has not elapsed as to them.
3. Ordinary dividends. The present rule, enunciated by a closely divided court in State v. U.S. Steel Corp., 12 N.J. 38 (1953), aff'g 19 N.J. Super. 274 (Ch. Div. 1952), is that the escheat of stock does not include unclaimed dividends declared and paid within the 14-year period. The State urges that "it is time for this Court to reexamine that authority in light of present-day conditions, and by an enlightened interpolation of subsequent decisions, postulate a new rule from that which may have existed in an earlier day."
In its decision, 12 N.J. at 47-48, the court said:
We find no merit in the State's contention that the escheat of stock includes the unclaimed dividends within the 14-year period. The statute works a forfeiture and therefore must be strictly construed. *47 McNeely v. Woodruff, 13 N.J.L. 352, 357 (Sup. Ct. 1833); 3 Sutherland, Construction (3d ed), secs. 5603 and 5604. It is a well settled principle that escheat and forfeiture are not favored by the law, and any doubt as to whether property is subject to escheat is resolved against the State. 19 Am. Jur., sec. 14, p. 387. There is nothing in the theory of definitive right to include, as accretions of the stock, dividends declared within the 14-year period and unpaid for want of knowledge of the stockholders' whereabouts. Dividends on stock constitute a portion of the accumulated surplus or profits of the enterprise allotted to the stockholders according to their several interests upon declaration of the dividend which becomes separate and distinct from the stock and ordinarily would not pass by the transfer of the stock by the stockholder unless the dividends were included in the contract. This is so even as to dividends declared before the transfer but not payable until after the transfer. Martindell v. Fiduciary Counsel, Inc., 133 N.J. Eq. 408, at page 415 (E. & A. 1943).
The Legislature could have provided for the escheat of dividends declared within 14 years, and the question is whether the Legislature intended to escheat such property. The legislative policy seems to be that before personal property can be escheated the owner or his whereabouts must be unknown for a period of 14 years, N.J.S.A. 2:53-17, and in the definition of personal property found in N.J.S.A. 2:53-15 the statute, inter alia, defines personal property to mean "stocks, bonds * * * and every other kind of tangible or intangible property and the accretions thereon." The effect is to define and distinguish accretions as personal property separate and distinct from the property upon which it is an accretion. Thus, by the express terms of the act the dividends declared within the prescribed period of 14 years are not escheatable because the dividends declared within the 14-year period cannot be said to have remained unclaimed for that period.
Examination of subsequent decisions does not support the State's argument that the court's views have been eroded. The holding that dividends accruing within the 14-year period are not escheatable was restated in the case of State by Parsons v. Fidelity Union Trust Co., 25 N.J. 387 (1957). When the State suggests that there has been a shift to a more liberal construction, it misreads what the court actually said in the subsequent case of State by Parsons v. United States Steel Corp., 22 N.J. 341 (1956);
Nor do we think that the statute is to be strictly construed so far as stakeholders are concerned. Defendant calls attention to *48 State v. United States Steel Corporation, 12 N.J. 38, 47 (1953), where it was said:
It is a well settled principle that escheat and forfeiture are not favored by the law, and any doubt as to whether property is subject to escheat is resolved against the state.
The statement was made in response to the State's argument that dividends declared by the corporation less than 14 years prior to suit should be subject to escheat under R.S. 2:53-17 (now N.J.S. 2A:37-13) providing for escheat of personal property after expiration of the 14 year period. We held that dividends which had not attained the 14 year vintage were not subject to escheat until that time, but the declaration of strict interpretation was expressive of an attitude toward the unknown owner rather than the corporate debtor. [at 355]
See also State by Richman v. Sperry & Hutchinson Co., 23 N.J. 38, 43-44 (1956).
Even if there were merit to the contention that the present rule should be changed, this court is nevertheless bound to follow the opinion of the majority in the first U.S. Steel case, supra. State v. Echevarria, 38 N.J. Super. 415, 417 (Cty. Ct. 1955). The arguments for reversal of existing precedents are properly presented to the Supreme Court. Franco v. Davis, 51 N.J. 237, 238 (1968); Russ v. Metropolitan Life Ins. Co., 112 N.J. Super. 265, 285 (Law Div. 1970). It is also noteworthy that the Legislature has not amended the pertinent section of the statute in the intervening years.
4. Stock dividends. No reported case has been brought to the attention of the court which deals specifically with the escheatability of stock dividends declared within the 14-year period. The nature of such dividends and their differentiation from cash dividends and stock splits, are explained in the case of In re Arens, supra:
When a dividend is in cash, both the earned surplus and cash assets accounts of the corporation are reduced. Obviously it intends to, and does, distribute that amount of profits to its shareholders. A distribution in stock is, however, quite a different thing. In the case of the true "stock split," no change whatever is made in any corporate accounts. More shares are issued to present holders *49 simply by reducing par or stated value. There is obviously no distribution in any sense and clearly the new shares belong to, and are always assigned to, trust principal under any rule. A "stock dividend"  an unfortunate label in many instances  involves, on the other hand, a capitalization of earnings by a transfer on the corporate books, from the earned surplus account to a capital account, of an amount fixed by the corporation as the price paid, so to speak, for the new stock issued to the shareholders. Actually this does not amount to a distribution of earnings, but rather the opposite  a decision to retain them permanently in the business, presumably as necessary or desirable to assure its growth and stability. * * * [41 N.J. at 375]
We are not concerned here with the treatment, as between principal and income, to be accorded the distribution of corporate securities held as assets of a trust.
It has been said that a stock dividend, which converts surplus assets into capital, takes nothing from the property of the corporation and adds nothing to the capital of the shareholder. The number of shares is increased, thus diminishing the value of each share but leaving the aggregate value of all the stock substantially the same. The only change is in the evidence which represents that interest, the new shares and the original shares representing the same proportional interest that the original shares represented before the issue of the new ones. 2 Fletcher, Cyclopedia Corporations (1971 rev.), § 5362.
Since the shareholder's proportionate interest remains the same, there is a superficial resemblance between a stock dividend and a stock split. The difference is that a stock split does not produce a distribution of any kind, and the corporate accounts are unchanged, whereas the declaration of a stock dividend, though the shareholder's interest is unaltered, requires a transfer on the corporate books from the earned surplus account to the capital account. Furthermore, a stock split is achieved merely by altering the par value of each share and increasing or decreasing the number of shares accordingly, so that the total value is not affected. A stock dividend, however, adds something of value to the shareholder's portfolio, even though there is *50 no change in the shareholder's proportionate interest in the corporation.
The inquiry now is whether stock dividends are "accretions" within the meaning of the escheat statute. Judge Goldmann, sitting in the Chancery Division, commented in State v. United States Steel Corp., supra, 19 N.J. Super. at 302, that the term "accretion," as related to corporate finance, "has received very limited consideration in the reported cases." He said further:
* * * One is thrown back upon such standard non-legal works as Webster's New International Dictionary (2d ed.), which defines "accretion" as "a. organic growth; enlargement. b. increase by external addition, or by accession of parts externally." There is a cross-reference to "accrue," which in turn is defined as "to come by way of increase or advantage; also, to arise or spring as a growth or result;" "to be added by ordered growth in process of time."
In the first U.S. Steel case, supra, the Supreme Court said that there was nothing in the theory of definitive right to include dividends as accretions of the stock. The court did not define the word other than to hold that the effect of the statutory language was to "define and distinguish `accretions' as personal property separate and distinct from the property on which it is an `accretion.'" The opinion assumes, without actually saying so, that ordinary dividends are accretions. The dissenting opinion supports the assumption to this extent:
Dividends on stock, whether declared before or within the 14-year period, are "accretions" in statutory contemplation. The majority, conceding this, * * * nevertheless holds that N.J.S.A. 2:35-15 is to be read as constituting "accretions" as an item in the catalog of escheatable items "separate and distinct from the property upon which it is an `accretion.'"
Whether the majority did in fact consider ordinary dividends as accretions need not detain us, although Judge Goldmann in the Chancery Division, supra, 19 N.J. Super. *51 at 302, said that the "dividends in question are not accretions to the stock within these definitions, whose emphasis is upon organic growth, natural growth." He suggested, in passing, that "a stock dividend might be held to be an `accretion' upon an original share, as might subscription rights" (at 304); and it is a fair assumption that the Supreme Court would have so ruled, had the question been put squarely before it.
The conclusion to be reached, therefore, is that stock dividends are accretions within the meaning of the statute. That being so, U.S. Steel controls, so far as this court is concerned, and stock dividends declared within the 14-year period are not escheatable.
5. Cash in lieu of stock dividends. This deals with instances in which cash was paid in lieu of fractional shares. Such transactions necessarily involve a distribution to shareholders of corporate surplus which otherwise would have been appropriated to fixed capital. To this extent it is undistinguishable from an ordinary dividend. Consequently, unclaimed cash in lieu of stock dividends is not escheatable within the 14-year period.
By reason of the foregoing, the court concludes that the State may escheat in these proceedings only original shares of stock held by defendant and unclaimed for a period of 14 or more successive years next preceding the institution of this suit, together with such additional shares as have resulted from stock splits or replacements; provided, of course, the last known address of the owner is in this State (or the owner is unknown), or is in a state which does not have an applicable escheat statute.