## II

**E. C. W., Petitioner, Appellant,**

v.

**M. A. W., Respondent, Appellee.**

Supreme Court of Delaware.

Submitted March 14, 1980.

Decided Aug. 19, 1980.

---

H. Alfred Tarrant, Jr., Wilmington (argued) of Cooch & Taylor, Wilmington, for petitioner–appellant.

Alene S. Berkowitz, Wilmington (argued) of Knecht, Greenstein, Schagrin & Berkowitz, Wilmington, for respondent–appellee.

Before DUFFY, McNEILLY and HORSEY, JJ.

HORSEY, Justice:

The sole question raised by this appeal is whether stock dividends paid during marriage to one spouse on shares of stock acquired before marriage are marital property under 13 *Del.C.* Chapter 15, the Delaware Divorce and Annulment Act. Husband appeals Family Court's ancillary ruling, following divorce of the parties, that all such dividends received by him during marriage were marital property. We affirm.

I

Under the Delaware Divorce and Annulment Act, 13 *Del.C.* Chapter 15, all property acquired by either spouse during marriage, and regardless of how such property be titled, is "presumed" to be marital property, subject to division by the Family Court upon divorce. 13 *Del.C.* § 1513(c).[1] Section 1513(b) provides that the marital property presumption is subject to only three exceptions. Those exceptions are: "(1) Property acquired in exchange for property acquired prior to the marriage; (2) Property excluded by valid agreement of the parties; and (3) the increase in value of property acquired prior to the marriage." 13 *Del.C.* § 1513(b)(1)–(3).

The burden of overcoming this statutory presumption and proving that the property sought to be excluded falls within one of the three statutory exceptions is placed upon the party seeking to exclude the property from division between the parties. *See Husband R. T. G. v. Wife G. K. G.*, Del.Supr., 410 A.2d 155 (1979); and *J. D. P. v. F. J. H.*, Del.Supr., 399 A.2d 207 (1979). With this brief background of the statute, we take up the facts and husband's contention that the stock dividends in question are excluded from "marital property" under 13 *Del.C.* § 1513(b).

II

The parties were married in 1966 and divorced in 1978. Before marriage, husband owned some 800 shares of the capital stock of a Delaware corporation ("the Company") for whom he worked. During the marriage, husband acquired a significant number of additional shares of stock of the Company–increasing his ownership by seven–fold. The increase during marriage resulted from three sources: *first*, from a "swap" of shares in two other concerns that husband had owned before marriage; *second*, from direct acquisitions of additional shares of the Company stock; and *third*, from stock dividends.[2] The stock dividends

---

1. 13 *Del.C.* § 1513(c) provides in part as follows:

   "All property acquired by either party subsequent to the marriage is presumed to be marital property .... The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subdivisions (1) through (3) of subsection (b) of this section."

2. The dividends in the form of stock had been issued on two occasions: in 1968, when 528 shares were issued to husband; and in 1977, when an additional 2,204.5 shares were received by husband on the Corporation's declaration of a 50 percent dividend.

had been declared, according to the President of the Company, for two reasons: (1) to "lock in" surplus by a transfer of earned surplus to capital to avoid erratic payment of dividends; and (2) to increase the number of issued shares and thereby reduce the price per share so as to give younger employees a better opportunity to acquire stock in the Company.

The parties do not contest the Trial Court's treatment of husband's stock acquisitions falling in the *first* and *second* categories. The Court found the Company stock acquired during marriage by "swaps" to be excluded from marital property as property acquired by "exchange" under 13 *Del.C.* § 1513(b)(1). And husband conceded that all shares directly acquired by him—presumably by purchase or by gift—were marital property under 13 *Del.C.* § 1513(c). Husband also conceded that all cash dividends on his Company stock received by him from time to time during marriage were marital property.

As to the *third* category of stock received by husband during marriage—amounting to some 2,250 shares distributed on husband's pre–marital shares of stock–the Court below concluded that they were stock dividends, not stock splits,[3] and to be considered marital property.

### III

On appeal, husband concedes that the distributions in question were stock dividends but contends that the Trial Court erred in ruling, as a matter of law, that stock dividends acquired during marriage were not exempt under § 1513(b) from marital property subject to division between the parties.

Husband argues that stock dividends come within the exclusion of § 1513(b)(1) as "property acquired in exchange for property acquired prior to marriage." Husband says this is so because a stockholder's percentage of equity interest in a corporation remains unaffected by a stock dividend declared out of earnings. Since the value of husband's premarital shares was proportionately reduced by the additional shares issued to him, husband states that he has received nothing of value[4] above what he previously owned. Husband adds that the payment of a stock dividend is no different than if the Company had retained its earnings for the years in question and had paid no dividend.

### A.

It is true, as husband says, that as a result of the stock dividends, husband now has a larger number of shares representing exactly the same percentage of outstanding stock having the identical cumulative market value as he had before the stock dividends. However, the fact remains that with a stock dividend earnings or profits are capitalized, and there is an offsetting distribution to the shareholders of shares evidencing the value of the assets transferred to capital. In this respect, a stock dividend differs from a stock split which "is merely a dividing up of the outstanding shares of the corporation into a greater number of units, without disturbing the stockholder's original proportional participating interest in the corporation." 19 Am. Jur.2d, *Corporations*, § 808 at page 285.

In its ordinarily accepted meaning, a stock dividend is a dividend payable in stock instead of cash, the declaration of which involves the creation and issuing of new stock to be distributed pro rata to the shareholders as evidence of the contemporaneous transfer of an equivalent amount of the surplus earnings or profits to the capital fund of the corporation. It differs materially from a cash dividend. A stock dividend takes nothing from the property of the corporation and adds nothing to the interest of the shareholders as such ... The interests of the shareholders in the corporation remain

---

3. Husband had apparently contended below that such distributions represented stock splits while wife contended that they were in fact, stock dividends.

4. Husband's actual phraseology is that nothing has been added "to the capital of the shareholder."

the same and in the same proportions, assuming that the dividend is declared in the same kind of stock, since the whole number of shares after the pro rata distribution, as before, represent the same corporate assets. Such a "dividend" does not distribute property to the shareholder; it changes the form of his investment, ordinarily by increasing the number of his shares, thereby diminishing the value of each share and leaving the aggregate value of all his stock substantially the same. Such an increase simply dilutes the shares as they existed before. Unlike a cash dividend, therefore, the stock dividend cannot be translated into money for the shareholder without a corresponding dimunition in the proportionate interest formerly held by him and in the ratable amount of future dividends and distributions to which he would otherwise be entitled.

19 Am.Jur.2d, *Corporations, supra*, § 812, pages 288, 289.

■ Given this characterization of stock dividends, husband contends that it is "obvious" that the shares in question were acquired by him "in exchange for property acquired prior to the marriage" under § 1513(b)(1). We cannot agree.

The fact that husband's overall percentage ownership of the capital of the Company has not been increased by the payment of the stock dividends does not mean that property of value has not been received by him through the stock dividends. For husband has clearly received during marriage property of value that he did not have before marriage.[5] And while the value of husband's premarital shares in the Company may have been proportionately reduced by the dividends, no exchange has occurred with respect to his premarital shares. Rather, husband has received additional shares of the Company stock—without giving up any of his previously acquired shares. The fact that the value of husband's previously acquired shares has been reduced is not equivalent to an "exchange." Had the Company declared a stock split it could be said that an exchange had taken place since additional shares would be issued based on a reduced per share value without any increase in the outstanding shares' aggregate value.

### B.

In the absence of available precedent for this question under the Delaware Divorce and Annulment Act, husband refers to case law in community property states as authority for his position. *See Blaine v. Blaine*, Ariz.Supr., 63 Ariz. 100, 159 P.2d 786 (1945); *Daigre v. Daigre*, La.Supr., 228 La. 682, 83 So.2d 900 (1955); and *Johnson v. First National Bank*, Tex.Civ.App., 306 S.W.2d 927 (1957). However, the critical distinction between the law of those states and Delaware is that in Delaware we start with the explicit presumption that all property received during marriage is marital property. This is a wholly different starting point from that found in many community property states which, by statutes drawn from civil code origins, presume that fruits and profits of separate property are also separate property.[6]

■ While wife has referred us to the law of trusts and its rules as to allocation of

---

**5.** The Trial Court valued each share of stock received by husband during marriage at $25.

**6.** Statutes of other community property states vary significantly from this general rule. For example, by the Louisiana Civil Code the fruits and profits of paraphernal (separate) property, "including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership ... unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit ...." La. Civil Code, Art. 2386. Even with this presumption, the Louisiana Supreme Court has held that absent a declaration of separate property stock dividends on paraphernal property of the wife is separate property. *Daigre v. Daigre, supra.*

Texas adopts the principle of Spanish Civil Law that fruits and profits of separate property are community property. Texas courts in a marital property division have distinguished dividends paid in cash and those paid in stock, the former being community property and the latter separate property. *See, e. g., Johnson v. First National Bank, supra.*

stock dividends between an income beneficiary and a remainderman, we find the reference unhelpful because of the lack of any clear analogy between the competing parties. And since the enactment of 12 *Del.C.* § 3526, the so–called prudent man rule controls the allocation of corporate distributions between trust income and principal.

Affirmed.