William T. LYNAM, III,
Petitioner-Appellant,
Cross-Appellee,

v.

Joan D. (Lynam) GALLAGHER,
Respondent-Appellee,
Cross-Appellant.

Supreme Court of Delaware.

Submitted: Dec. 30, 1986.
Submitted before the Court en
Banc: Feb. 24, 1987.
Decided by Order: Feb. 26, 1987.
Opinion Issued: May 11, 1987.

Allen M. Terrell, Jr. (argued) and Anne F. Bugg of Richards, Layton & Finger, Wilmington; H. Alfred Tarrant, Jr. and Thomas D. Shellenberger of Cooch and Taylor, Wilmington, for appellant.

Francine S. Gritz (argued) and Ann Joyce Letcher of Crompton and Gritz, Wilmington, for appellee.

Before HORSEY, MOORE, WALSH, and HOLLAND, constituting the Court En Banc.

HORSEY, Justice:

Husband appeals Family Court's ancillary rulings, following divorce of the parties, relating to the marital property division, the time for valuation of marital assets, and the dissipation of marital assets. Wife cross-appeals the Family Court's award of attorneys' fees. The main issue on appeal is whether stock dividends that one spouse receives during marriage on shares of stock acquired before marriage are marital property under 13 *Del.C.* § 1513(a).[1] Under the facts of this case, all of the stock dividends declared on husband's premarital shares of stock are not marital property subject to division under section 1513(a). We, therefore, affirm in part, reverse in part and remand the case to Family Court for modification of the judgment consistent with our Opinion.[2]

The relevant facts are as follows: the parties were married in 1959, separated in 1983, and divorced in 1984. Prior to their marriage, husband received the corpus of a trust fund from the estate of his paternal grandfather. The trust fund, a premarital asset, consisted of 960 shares of Wilmington Trust Company ("WTC") stock valued at $20,000. These 960 shares represented .0010% of the total outstanding shares of WTC stock and were held in husband's individual name.

In 1961, husband sold 100 shares of WTC stock to a third party. Husband also transferred an additional 100 shares of the stock to wife and himself as joint tenants with right of survivorship. Husband testified that his motive for transferring the 100 shares into joint names was to take advantage of a federal income tax exemption for dividends received.

In 1966, WTC declared a 100% stock dividend. As a result of the bank's action, husband's holdings increased to 1,720 shares: 1,520 in his individual name and an additional 200 shares in joint title with wife. In accounting for the stock dividend,

---

1. 13 *Del.C.* § 1513(a) provides, in pertinent part, as follows:

   In a proceeding for divorce or annulment, the Court shall, upon request of either party, equitably divide, distribute and assign the marital property between the parties without regard to marital misconduct, in such proportions as the Court deems just after considering all relevant factors....

2. Due to wife's motion before this Court at time of argument seeking immediate remand of this case to Family Court to permit her to petition that Court to review the issue of permanent alimony, we announced our decision in an Order issued February 26, 1987, with the notation that this Opinion would follow at the earliest practical time.

WTC debited its surplus account and credited its capital stock account in an amount equal to the number of newly-issued shares multiplied by the par value of the shares.[3] WTC's total capital funds were unchanged by the stock dividend and each stockholder's proportional share of equity in the bank remained the same.

Immediately before the stock dividend, WTC stock was trading on the over-the-counter market at a price of $140 bid and $144 asked. Immediately after the dividend, the price of the stock fell to $70 bid and $73 asked. Thus, as a result of the dividend, husband owned twice as many shares of WTC stock, with each share equal to half the value of a pre-dividend share of WTC stock.

In 1972, husband created an inter vivos trust for the benefit of the parties' two children. Of the 1,520 shares of WTC stock remaining in his individual name, husband placed 760 shares in the trust. Husband holds a reversionary interest in this stock. Similarly, in 1979, husband created a second inter vivos trust and placed his remaining 760 shares of WTC stock in this trust for the benefit of the children. Husband also holds a reversionary interest in this stock.

In 1983, WTC declared a second 100% stock dividend. Accordingly, the holdings of each trust increased to 1,520 shares and the number of shares jointly held by husband and wife increased to 400. As with the 1966 dividend, there was no change in WTC's capital funds and each stockholder's proportional share of equity in WTC remained the same. Again, immediately following the dividend, the price of a single share of WTC stock fell by 50%.

In 1985, eight months after the entry of the parties' final divorce decree, WTC declared a third 100% stock dividend. This dividend caused the holdings of each trust to increase to 3,040 shares and the number of shares jointly held by husband and wife to double to 800. The accounting for this dividend was the same as for the earlier stock dividends. As with the two previous stock dividends, there was no change in husband's proportional ownership in WTC and the market price of each share immediately after the dividend was equal to half the price of a share immediately before the dividend.

Thus, the number of WTC shares held in husband's individual name increased from 760 to 6,080 shares and the number of shares jointly owned by husband and wife increased from 100 to 800 shares. During this time period husband did not purchase, inherit or receive any other shares of WTC stock except those he acquired through the stock dividends. Nor did husband dispose of any WTC stock, with the exception of the 100 shares he sold in 1961 to a third party.

In the 1985 ancillary hearing following the divorce of the parties, husband and wife disagreed over whether the stock dividends paid during the marriage on the 760 shares of WTC stock, titled in husband's individual name and acquired before marriage, were marital property pursuant to 13 *Del.C.* § 1513. Wife, relying upon *E.C.W. v. M.A.W.*, Del.Supr., 419 A.2d 934 (1980), argued that with the exception of the original 760 shares, the remaining 5,320 shares were marital property. Husband, however, acknowledged *E.C.W.* as legal precedent but developed an extensive fact record in support of his argument that the holding in *E.C.W.* was erroneous. The Family Court adopted wife's argument and held "that the additional WTC shares received during marriage as a result of the three stock dividends are marital property." The Court ruled that all of husband's shares of stock acquired from stock dividends during marriage, excluding only the 760 shares which he owned in his individual name prior to marriage, constituted marital property subject to division under section 1513(a).

I

The first issue presented is whether the Family Court erred as a matter of law in

---

**3.** This accounting procedure was made in accordance with 8 *Del.C.* § 173 and with generally accepted principles of accounting. Likewise, WTC followed this same procedure in its declaration of two subsequent stock dividends.

holding that the 5,320 shares of WTC stock husband received during the marriage as a result of stock dividends were marital property subject to division under 13 *Del.C.* § 1513(a).

On appeal,[4] husband asserts two alternative arguments. *First,* he argues that *E.C.W.* is distinguishable from the instant case. *Second,* he contends that *E.C.W.* was wrongly decided because (1) a stockholder does not acquire property upon receipt of stock dividends; (2) if, however, a stockholder does acquire property upon receipt of stock dividends the dividends are acquired in exchange for the stockholder's prior equity ownership; or (3) stock dividends represent an increase in value of property acquired prior to marriage.

Wife counters that the Family Court correctly found that the case at bar was indistinguishable from *E.C.W.* Hence, the Court properly held that husband acquired new property upon receipt of the WTC stock dividends. Wife also argues that (1) stock dividends received during marriage on premarital stock are not property acquired in exchange for prior equity ownership; and (2) stock dividends do not represent an increase in value of property acquired prior to marriage.

We conclude that the Family Court erred as a matter of law in ruling that all of husband's WTC stock acquired during marriage, excluding only the 760 shares which he owned in his individual name prior to marriage, constituted marital property subject to division under 13 *Del.C.* § 1513(a).

A.

We must reject husband's first contention that this case is distinguishable from *E.C.W.* Husband asserts that the Family Court erred in applying *E.C.W.* be-cause "it can fairly be inferred that the company in *E.C.W.* was a relatively small, closely held firm." Husband also asserts that the Court in *E.C.W.* was not presented with either financial data for the corporation or evidence of the value of the company's stock before the declaration of the stock dividends. Although these distinctions may be meaningful from a corporate accounting perspective, they should not be determinative as between parties to a marital property dispute under 13 *Del.C.*, ch. 15. Further, the holding in *E.C.W.* was not bottomed on the quoted inference suggesting spousal control or manipulation of the close corporation.[5] Therefore, to the extent our ruling in this case is inconsistent with *E.C.W. v. M.A.W.,* Del.Supr., 419 A.2d 934 (1980), *E.C.W.* is overruled.

B.

We now turn to husband's second argument—that the stock dividends in question are excluded from marital property pursuant to 13 *Del.C.* § 1513(b). Under the Delaware Divorce and Annulment Act, 13 *Del.C.*, chapter 15, we start with a statutory presumption that: all property acquired by either spouse during marriage, regardless of how such property be titled, is "presumed" to be marital property, subject to division by the Family Court upon divorce. 13 *Del.C.* § 1513(c).[6] Section 1513(b), however, provides that the marital property presumption is subject to three exceptions. Those exceptions are: "(1) Property acquired in exchange for property acquired before marriage; (2) Property excluded by valid agreement of the parties; and (3) The increase in value of property

---

**4.** Argument in this case was originally held before a three-justice panel of this Court on December 30, 1986. By Order dated January 5, 1987, we scheduled the case for rehearing before the Court *en banc* and directed the parties to exchange supplemental memoranda on the stock dividend issue.

**5.** For examples of how a majority shareholder in a close corporation can manipulate the declaration and form of dividends, *see* O'Neal and Thompson, *O'Neal's Oppression of Minority Shareholders,* § 3.04 (2nd ed. 1985).

**6.** Section 1513(c) provides, in pertinent part, as follows:

"All property acquired by either party subsequent to marriage is presumed to be marital property.... The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subdivisions (1) through (3) of subsection (b) of this section."

acquired before marriage." 13 *Del.C.* § 1513(b)(1)–(3).[7]

The burden of overcoming this statutory presumption and proving that the property sought to be excluded falls within one of the three statutory exceptions is placed upon the party seeking to exclude the property from division between the parties. *See E.C.W.,* 419 A.2d at 935; *Husband R.T.G. v. Wife G.K.G.,* Del.Supr., 410 A.2d 155, 160 (1979); *J.D.P. v. F.J.H.,* Del. Supr., 399 A.2d 207, 211 (1979).

Under the facts of this case, we conclude that all of the shares of WTC stock that husband received during the marriage from three 100% stock dividends upon his premarital shares of WTC stock represent an increase in value of property that is excluded from marital property under 13 *Del.C.* § 1513(b)(3).

### C.

As a preliminary matter, it is necessary for us to distinguish between a cash dividend, a stock dividend, and a stock split. A cash dividend is the corporate distribution of cash assets to its stockholders from the profits or surplus assets of the corporation. 19 Am.Jur.2d *Corporations,* § 814 at 291. A cash dividend reduces the net assets of the corporation and transfers that amount of cash to its stockholders. *Id.* Therefore, a cash dividend severs a portion of the corporation's profits from the corporation and its stockholders receive a present return on their investment in the form of cash. *Id.*

A stock dividend is a dividend payable in stock instead of cash. *Id.* § 812 at 288. In order to account for a stock dividend, a charge is made against the corporation's surplus account with a corresponding credit to the capital stock account equal to the stock dividend. *Id.* New stock is issued against this charge and certificates are delivered to the existing stockholders in proportion to their previous holdings. *Id.*

A stock dividend takes nothing from the property of the corporation and adds nothing to the interests of the stockholders. *Id.* The title to all corporate property remains in the corporation; however, corporate profits previously available for distribution in cash dividends are permanently appropriated to fixed capital. *Id.* at 289. The interest of the stockholders in the corporation remain the same and in the same proportions because the whole number of shares after the pro rata distribution represent the same corporate assets. *Id.* at 289. Therefore, a stock dividend does not distribute property to the stockholders; it merely changes the form of their investment by increasing the number of their shares, thereby diminishing the value of each share and leaving the aggregate value of their stock in the corporation the same.

A stock split is a dividing up of the outstanding shares of a corporation into a greater number of units, without altering the stockholder's proportional ownership in the corporation. *Id.* § 808 at 284. When declaring a stock split, a corporation does not alter its capital or surplus accounts. Hence, a stock split is essentially a change of form and not of substance. *Id.* at 285.

### D.

The record in this case supports the conclusion that husband did not receive any property of value at the time of the stock dividends above what property he owned prior to the parties' marriage. Immediately after each stock dividend, the market price of WTC stock decreased by 50% and each stockholder's proportional ownership in WTC remained the same. Had WTC not declared any stock dividends, the price of husband's premarital shares of WTC stock would have been approximately eight times their present value. Therefore, any increase in value of husband's WTC stock during the twenty-seven-year period was due to the economic appreciation in price of

---

7. 13 *Del.C.* § 1513(b) reads as follows:
   (b) For purposes of this chapter only, "marital property" means all property acquired by either party subsequent to the marriage except:
      (1) Property acquired in exchange for property acquired prior to the marriage;
      (2) Property excluded by valid agreement of the parties; and
      (3) The increase in value of property acquired prior to the marriage.

husband's 760 premarital shares and not due to the three stock dividends.

■ We find that the stock dividends fall within the exception embodied in 13 *Del.C.* § 1513(b)(3) and that husband overcame the statutory presumption that the stock dividends are marital property. *Accord In re Marriage of Smith*, Ill.Supr., 86 Ill.2d 518, 56 Ill.Dec. 693, 427 N.E.2d 1239, 1246 (1981) (reaching the same result under the Illinois Marriage and Dissolution of Marriage Act).

### E.

Section 1513(b)(1), the exception for property acquired in exchange for marital property, is inapplicable to this case. No exchange took place because husband received additional shares of WTC stock without giving up any of his premarital shares. *Cf. In re Marriage of Bruske*, Mo.App., 656 S.W.2d 288, 295 (1983).

■ We also reject wife's argument that the WTC stock certificates husband received through the stock dividends constitute "new" property acquired during the parties' marriage.[8] Stock certificates are mere evidence of property. *Baker v. Bankers' Mortgage Co.*, Del.Ch., 135 A. 486, 487–88 (1926), *aff'd*, Del.Supr., 141 A. 277 (1927). *See also State v. New Jersey National Bank and Trust Co.*, N.J.Super., 117 N.J.Super. 38, 283 A.2d 543, 547 (1971). Here the record discloses that the new WTC stock certificates represent husband's premarital ownership interest in WTC divided into smaller pieces. Insofar as the Court in *E.C.W.* distinguished between stock dividends and stock splits, the distinction may be relevant for internal corporate accounting purposes, but the distinction has no relevance when determining whether a public stockholder has acquired property that he did not have prior to the marriage.

### II

Husband next argues that the Family Court abused its discretion in valuing his thrift plan, TRESOP, and pension plan as of the date of divorce, December 3, 1984. In April 1984, husband filed a petition for divorce, alleging that the parties had been separated since November 6, 1983. Thereafter, in June 1984, wife contested the allegation setting forth a later date of separation. Husband contends that wife's denial of the petition's date of separation precluded him from proceeding with his uncontested divorce hearing and caused a six-month delay in the divorce proceeding, i.e., the divorce would have been final on June 22, 1984, but for wife's conduct.

During this six-month period, husband continued to contribute to his thrift plan and TRESOP and his employer continued to contribute to his pension plan. Therefore, husband argues that by valuing these assets as of December 3, 1984, the Family Court permitted wife to benefit from her alleged bad faith denial of the date of separation because his thrift plan, TRESOP, and pension plan were more valuable on the delayed date of divorce.

■ The Family Court has discretion to value marital property as of the time of divorce, the time of separation, or the time of the hearing. *Bachtle v. Bachtle*, Del. Supr., 494 A.2d 1253, 1256 (1985); *Walter W.B. v. Elizabeth P.B.*, Del.Supr., 462 A.2d 414, 415 (1983). However, in the absence of unfair tactics by the other spouse, property received by a spouse subsequent to the marriage and prior to the divorce decree is marital property. *Wife J. v. Husband J.*, Del.Super., 367 A.2d 655, 657 (1976).

■ In this case, the record supports the Family Court's finding that wife's contest of the divorce, which caused a six-month delay, did not amount to unfair tactics. Both wife and her minister-counsellor testified that wife had emotional difficulty accepting the marital breakup and that she

---

**8.** *See also Revised Model Business Corporation Act Annotated* §§ 1.40(6) and 6.23, Official Comment at 394 (1984), which states: "A share dividend is solely a paper transaction: No assets are received by the corporation for the shares and any 'dividend' paid in shares does not involve the distribution of property by the corporation to its shareholders."

did not believe husband to be serious about his intentions to separate. Furthermore, it was a complete surprise to wife when husband told her, only a few days prior to leaving the home, that he wanted a separation. The emotional impact of this situation could easily account for wife's failure to readily accept that the parties' twenty-five-year marriage was over. Hence, we decline to find the Family Court to have abused its discretion in valuing husband's thrift plan, TRESOP, and pension plan as of the date of divorce.

## III

■ Husband's third argument is that the Family Court abused its discretion in holding that he had dissipated marital assets. We find that the Family Court did not abuse its discretion or otherwise err in any of its rulings relating to husband's dissipation of certain of the marital assets.

In December 1980, husband opened an account with the Fidelity Daily Income Trust Fund ("the FDIT account"). Husband does not dispute that the FDIT account is a marital asset. Rather, husband contends that he spent the funds in the FDIT account for proper marital purposes. However, because the FDIT account was a marital asset, both parties were enjoined from transferring, encumbering, concealing or in any way disposing of any of the property. *See* 13 *Del.C.* § 1509(a)(1).[9] Therefore, the Family Court correctly held that husband must account to the marital estate for the principal used from the FDIT account and for any interest that should have accrued.

## IV

Husband's final contention is that the Family Court erred in holding that the 800

**9.** Section 1509(a)(1) provides as follows:

(a) Upon the filing of a petition for divorce or annulment, a preliminary injunction shall be issued against both parties to the action, enjoining them from:

(1) Transferring, encumbering, concealing or in any way disposing of any property except in the usual course of business or for the necessities of life, and requiring the parties to notify the other of any proposed extraordi-

shares of WTC stock held by the parties in joint names were marital property. Wife counters that (1) husband did not preserve this issue for appeal because he failed to raise it before the Family Court;[10] and (2) husband's transfer of the shares of WTC stock to joint names created a presumption of a gift pursuant to 13 *Del.C.* § 1513(a)(9).

The Family Court's Opinion states, "The 800 shares of stock in joint names that are undisputedly marital will be included in the marital estate for disposition." (underlining added for emphasis). Husband now contends that he timely asserted a claim to the 800 jointly-held shares: (1) on his Family Court Rule 465 Financial Report; (2) at the ancillary hearing, when he testified as to his motive for transferring the shares; and (3) in a post-trial letter memorandum to the Family Court.

■ Assuming *arguendo* that husband fairly and timely raised the issue of whether the 800 shares of WTC stock registered in the names of the parties as joint tenants with right of survivorship were not marital property subject to division under 13 *Del.C.* § 1513(a), we conclude that Family Court correctly ruled that the 800 shares of WTC stock were marital property.

Husband's act of transferring 100 shares of his individually owned shares of WTC stock to himself and wife as joint tenants raised a rebuttable presumption that he intended a gift to wife. *Husband R.T.G. v. Wife G.K.G.*, Del.Supr., 410 A.2d 155, 160 (1979). In the absence of any indication to the contrary, if, during the marriage, either spouse receives a "gift" from any person, including the other spouse, the property received constitutes marital property as a matter of law under 13 *Del.C.* § 1513(b) subject to division between the parties.

nary expenditures and to account to the Court for all extraordinary expenditures after the preliminary injunction becomes effective.

**10.** Supreme Court Rule 8 provides:

Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.

*Id.*[11] A possible statutory exception occurs if the parties agree that the property received as a gift by one spouse is not to be marital property. *Id. See also* 13 *Del.C.* § 1513(b)(2).

The only evidence husband offered to rebut the presumption that the jointly-held shares of WTC stock were marital property was his testimony that he transferred the 100 shares to joint title in order to take advantage of a federal income tax exemption for dividends received. Upon this record, we find that husband's testimony failed to establish an agreement between the parties that the jointly-held stock was not marital property. Thus, husband did not rebut the statutory presumption that the 800 shares of jointly-held stock were marital property subject to division under section 1513(a).

## V

Lastly, we address wife's cross-appeal of the Family Court's award of attorneys' fees. Wife argues that the Family Court erred as a matter of law in not awarding her the full amount of her attorneys' fees and costs. Husband contends that the Family Court followed the applicable law and did not abuse its discretion in requiring him to pay 60% of the total amount of fees incurred by both parties.

■ The Family Court has broad discretion in awarding attorneys' fees and costs under 13 *Del.C.* § 1515.[12] *Husband B.W.D. v. Wife B.A.D.*, Del.Supr., 405 A.2d 123, 125 (1979). Such an award, however, must not be made arbitrarily and must be supported by the evidence. *Id.* at 125; *Walter S.J. v. M. Lorraine J.*, Del.Supr., 457 A.2d 319, 327 (1983).

■ In this case, the Family Court considered the financial conditions of the parties both prior to the action and subsequent to the Court's decision, the complexity of the issues involved in the action, the conduct of the parties in the course of the litigation, and the effect of the Court's division of the marital estate upon the parties' relevant financial condition. Furthermore, the Family Court set forth the reasons for its award of attorneys' fees. *Cf. Ann Marie H. v. Joseph J.H.*, Del.Supr., 456 A.2d 1233, 1234 (1983). Therefore, we decline to find that the Family Court has either abused its discretion or erred as a matter of law in its refusal to award wife the full amount of her attorneys' fees and costs.

Notwithstanding the foregoing, and in view of our stock dividend ruling, the Family Court shall be permitted upon remand to reexamine its rulings on allocation of assets (other than the stock dividends) in the marital property division and on award of alimony and attorneys' fees that may have been premised upon the assumption that wife would share in husband's stock dividends on premarital assets.

\*　\*　\*　\*　\*　\*

AFFIRMED in part; REVERSED in part; and REMANDED.

---

**11.** Similarly, in *Husband T.N.S. v. Wife A.M.S.*, Del.Supr., 407 A.2d 1045, 1048 (1979), we stated:

Placing the fund in the names of both of the parties jointly gave the wife a marital interest in the property; it became "marital property" as to her under 1513(b) because it literally became "property acquired by either party [here, the wife] subsequent to the marriage...."

**12.** 13 *Del.C.* § 1515 provides as follows:

The Court from time to time after considering the financial resources of both parties may order a party to pay all or part of the cost to the other party of maintaining or defending any proceeding under this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after the entry of judgment. The Court may order that the amount be paid directly to the attorney, who may enforce the order in his name.