Jane P. DANBERGER *, Petitioner,

v.

Daryl A. DANBERGER, Respondent.

File No. CN11–04649.
Petition No. 11–29330.

Family Court of Delaware,
New Castle County.

Submitted: Oct. 18, 2013.
Decided: Dec. 9, 2013.

Leslie B. Spoltore, Esquire, Fox Roths-child, LLP Wilmington, Delaware for Petitioner Jane P. Danberger.

David C. Gagne, Esquire, Woloshin, Lynch, Natalie and Gagne, P.A. Wilmington, Delaware for Respondent Daryl A. Danberger.

COONIN, Judge:

## NATURE OF THE PROCEEDINGS

This is the Court's decision regarding the tracing of Jane P. Danberger's (hereinafter "Wife") business held in corporate form to determine if it is premarital in nature and therefore excluded from equitable property division. Wife is represented by Leslie B. Spoltore, Esquire. It is Wife's position that her advertising agen-

* The Court has assigned pseudonyms to the parties, lay witnesses, and their addresses in this case in order to protect their identities.

cy, Danberger Associates, Inc., is wholly traceable to premarital assets and therefore should be excluded from the marital estate. Daryl A. Danberger (hereinafter "Husband"), who is represented by David C. Gagne, Esquire, contends that Danberger Associates, Inc. is a marital asset and accordingly should be subject to equitable property division. In the interest of judicial economy, the Court held a separate evidentiary hearing on this matter prior to the final hearing on matters ancillary to divorce hearing. The Court heard evidence from both parties regarding this matter October 17, 2013 and October 18, 2013.

## PROCEDURAL HISTORY

The parties were married on June 10, 1984. Wife filed a Petition for Divorce on September 2, 2011. In her Petition for Divorce, Wife alleges that the parties separated in March of 2010. Husband filed an Answer to the Petition for Divorce in which he claims the parties did not separate until July 1, 2011. At this stage in the proceedings, the Court need not determine when the parties separated, because the date of separation has no impact on the issue of tracing of corporate assets. A final Divorce Decree was entered on January 26, 2012. The Court retained jurisdiction over matters ancillary to the divorce, namely, property division, permanent alimony, counsel fees, and court costs.

Wife is the president, chief executive officer, and sole shareholder of a branding, advertising, and marketing agency in corporate form currently named Danberger Associates, Inc. It is Wife's position that her ownership interest in Danberger Associates, Inc. is not subject to property division, because the corporation was initially funded by the transfer of assets from a premarital sole proprietorship. Husband argues that Danberger Associates, Inc. is a

marital asset, created during the marriage, and therefore is subject to property division. Pursuant to a Scheduling Order entered on December 28, 2012, the Court determined that it would be in the interest of judicial economy to hold a separate evidentiary hearing prior to the final ancillary hearing to determine whether Danberger Associates, Inc. is a marital asset.

On April 30, 2013, Wife filed a Motion to Dismiss and for Sanctions or in the Alternative for an Adverse Inference and for Sanctions. In her Sanctions Motion, Wife averred that there was a filing cabinet located in the marital home, which, among other things, contained tax returns and supporting documents. Wife argued that these documents would have support her contention that Danberger Associates, Inc. is a premarital asset. At a deposition held on March 26, 2013, Husband admitted that sometime in February or March of 2012 he destroyed documents contained in the filing cabinet, after the parties separated and were divorced. However, Husband claimed that the only documents destroyed were bank statements from a closed joint checking account. Wife gained access to the marital home on April 4, 2013 and discovered that the filing cabinet was empty, with the exception of a few electrical cords and some scraps of paper. The Motion for Sanctions asked the Court to grant a default judgment, whereby, Husband's claim that Danberger Associates, Inc. is a marital asset would be dismissed. Alternatively, the Motion for Sanctions requested that the Court apply an adverse inference against Husband, whereby the Court would presume that the destroyed evidence would have supported Wife's claim that Danberger Associates, Inc. is a premarital asset.

A hearing was held on July 1, 2013 and October 15, 2013 to consider Wife's Motion for Sanctions. Following the hearing, the

Court issued a Decision dated December 9, 2013 (hereinafter "Sanctions Decision") finding that Husband had destroyed relevant evidence. The Court imposed sanctions on Husband, namely an adverse inference that the documents destroyed by Husband would have supported Wife's position that Danberger Associates, Inc. is traceable to premarital assets. Accordingly, the Court shall apply this adverse inference to the findings of fact in this matter.

## FINDINGS OF FACT

The Court will not restate all of the testimony and evidence presented at the hearing but will note some of the relevant evidence in support of its findings.

Wife initially attended the Philadelphia College of Pharmacy and Science, but later transferred to Lehigh University. Wife graduated from Lehigh University in 1980 with a bachelor's degree in Journalism and Science Writing. Wife stated that her objective after graduating college was to become a successful advertising and marketing professional.

Wife was first employed at Wilmington Trust from July 1980 to October 1980 in the bank's marketing training program. Wife left Wilmington Trust to work at Sonobond Corporation as a Writer and Project Manager. Wife remained with Sonobond from October 1980 to October 1981. In late 1981, Wife testified that during this time, she began creating a portfolio of her advertising work so she could seek her own clients.

In late 1981 or early 1982, Wife was approached by a representative of the DuPont Corporation regarding an opportunity to provide marketing and advertising services to DuPont. Starting in 1982, Wife performed branding, marketing, and advertising services for DuPont and several other corporations through the Krell Corporation. Approximately 80% of the work that Wife completed during this time period was for various divisions of DuPont. The Krell Corporation was an employee leasing organization or professional employee organization ("PEO"), which provided professional services to large corporations like DuPont. Wife billed her hours through the Krell Corporation for the work she completed for the client and was remunerated accordingly. Wife claims that she never had her own office at the Krell Corporation, nor did she receive any employee benefits from the Krell Corporation, nor did Krell exercise any supervisory function over Wife or her work product. However, the Krell Corporation is listed as Wife's employer on her 1982, 1983 and 1984 tax returns.

Starting in 1983, Wife began to market herself as an independent provider of branding, advertising, and marketing services. Wife held herself out as "The Technical Writers" for her marketing work in the science, engineering, and allied technical fields. Additionally, Wife used the name, "The Copywriters" for her more generic marketing work. In the fall of 1983, Wife approached her former college roommate, Paulette Stine, about possibly forming a partnership to provide marketing services. After considering this opportunity, Ms. Stine declined the invitation at that time. Wife also obtained a computer in 1983 to assist in her marketing and advertising work. Wife purchased this computer using a loan that was cosigned by her father.

In January 1984, Wife claims that she formed a sole proprietorship to perform branding, marketing, and advertising services. During 1984, Wife continued to be contracted to DuPont through the Krell Corporation; however, Wife alleges that she had also begun to perform her own independent marketing work through her

sole proprietorship. In the spring of 1984, Paulette Stine asked Wife if the opportunity to form a partnership was still open. Wife apparently told Ms. Stine that the opportunity to create a partnership was no longer available, because Wife was already too far underway with work through her sole proprietorship to need a partner.

Husband and Wife had dated each other since 1980 before they became engaged in 1983. The parties married on June 10, 1984. The parties did not cohabit, have a joint bank account, or otherwise comingle funds prior to their marriage in June 1984. Husband has been employed throughout the marriage as an electrical engineer at the Boeing Corporation.

Husband claims that Wife did not stop working for the Krell Corporation until sometime in July or August of 1984. Husband alleges that he had a conversation with Wife during their honeymoon, wherein Wife complained about how the men at the Krell Corporation made more money than the women. Husband indicated that he encouraged Wife to start her own marketing and advertising agency. It is Husband's position that Wife did not form a sole proprietorship until after the parties' marriage on June 10, 1984.

Husband and Wife filed a joint income tax return for the 1984 tax year. On the 1984 tax return, Wife's employer is listed as the Krell Corporation. However, the 1984 return also shows that Wife received $1892 of net profit from self-employment. A Schedule C was attached to the 1984 return which indicates that Wife had sole proprietorship income during the 1984 tax year. The 1984 Schedule C also shows that Wife took a deduction from her business revenues for the depreciation of certain assets, namely a computer and an answering machine. The Form 4562, which was also attached to the 1984 return, shows that Wife took a full year of depreciation for these assets and the assets were placed in service at the beginning of the 1984 tax year, prior to the parties' marriage in June 1984. In addition, Wife obtained an Employer Identification Number ("EIN") for her sole proprietorship on January 1, 1984. Business records from Danberger Associates, Inc. indicate that Wife's date of hire, for pension, annuity, and 401(k) purposes, is January 1, 1984. Expert testimony provided by Gregory Cowhey was that had Wife not started her business until after the date of marriage on June 10, 1984, only a partial year's depreciation would have been taken, not the full year as shown on the 1984 Schedule C.

Sometime in 1984, Wife ceased performing work through the Krell Corporation and only worked through her sole proprietorship. The parties' joint tax return for the 1985 tax year indicates that Wife was no longer employed by the Krell Corporation and that her only source of income was her sole proprietorship. At some point in either 1984 or 1985, Wife began holding her sole proprietorship out as Danberger Associates. During this period the sole proprietorship continued to provide the same type of branding, marketing, and advertising services to various corporations including DuPont.

On September 18, 1986, Wife formed her first corporation called Danberger Associates, Inc. Danberger Associates, Inc. provided this same branding, marketing, and advertising services to various corporate clients, including DuPont. Danberger Associates, Inc. had the same clients as Wife's former sole proprietorship. Wife was the sole shareholder of Danberger Associates, Inc. Husband was never a shareholder of Danberger Associates, Inc., was never an employee of Danberger Associates, Inc., and has never been involved in the day-to-day operations of the compa-

ny. The initial tax return for Danberger Associates, Inc., which was filed for the 1986 tax year, contains an Transferee Statement which reflects that Wife transferred all of the assets and liabilities from her sole proprietorship in exchange for 100% of the stock of Danberger Associates, Inc. At the time of the transfer, Wife's sole proprietorship had assets totaling $63,588 and liabilities of $8500. Danberger Associates, Inc. assumed all of these assets and liabilities in exchange for giving Wife 100% of the issued common stock of Danberger Associates, Inc. No cash or other property was received by Danberger Associates, Inc. in this transaction.

In 1996, DuPont sent a letter to Danberger Associates, Inc. indicating that they would be revising their sourcing agreement in such a way that it would permit DuPont to line review the books and records of Danberger Associates, Inc. This prompted Wife to explore options for restructuring her business in order to protect her other client's confidentiality from DuPont's proposed line review. Wife sought the advice of her accountant and attorney, who recommended that she create three additional corporate entities to manage her advertising enterprise and prevent DuPont from seeing the records regarding other clients.

The first new entity that was created was Danberger Communications, Inc. Danberger Communications, Inc. was incorporated on September 30, 1997 as a sub-chapter S corporation. Danberger Communications, Inc. was an operating company whose purpose was to service all non-DuPont clients and thereby avoid any confidentiality issues by preventing DuPont from ascertaining Wife's other clients when DuPont performed a line review of Danberger Associates, Inc.'s records. Danberger Communications, Inc. carried on an operation virtually identical to that of Danberger Associates, Inc. in that it provided branding, marketing, and advertising services to various corporate clients, but not to DuPont. Wife was the sole shareholder of Danberger Communications, Inc. The initial corporate tax return for Danberger Communications Inc., filed for the 1997 fiscal year, indicates that the initial assets of the corporation were $100 from a cashless, paper transaction.

On October 30, 1997, Danberger AMPM Company was incorporated. On January 1, 1998, the certificate of incorporation was amended changing the corporations name from Danberger AMPM Company to Danberger AMPM, Inc. The purpose of Danberger AMPM was to serve as an asset and property leasing entity and its clients were the other Danberger corporations. Danberger AMPM, Inc. was a sub-chapter S corporation and Wife was the sole shareholder of all the Danberger AMPM stock. The initial corporate tax return for Danberger AMPM, Inc. filed for the 1997 fiscal year, indicates that the corporation's initial assets were $100 from a cashless, paper transaction.

On October 30, 1997 Danberger HR, Inc. was incorporated. Danberger HR, Inc. was an employee leasing entity that serviced all payroll, employee benefits, and human resource matters for the affiliated Danberger companies. Therefore, all employees of that performed services for the Danberger affiliated companies became employees of Danberger HR, Inc. Danberger HR, Inc. was as sub-chapter S corporation and Wife was the sole shareholder of all Danberger HR stock. The initial corporate tax return for Danberger HR, Inc., filed for the 1997 fiscal year, indicates that the corporation's initial assets were $100 from a cashless, paper transaction.

Danberger Associates, Inc., Danberger Communications, Inc., Danberger AMPM,

Inc., and Danberger HR, Inc. operated as brother-sister corporations, also called affiliate corporations, under common ownership. Throughout the period that the four affiliated Danberger corporations existed, the sign on the shared office, business cards, and fax coversheets all continued to read "Danberger Associates, Inc." At no time did Wife hold out her business to existing or prospective clients as anything other than Danberger Associates, Inc. The unified purpose of the four affiliated Danberger corporations was to, as before, provide branding, marketing, and advertising services to corporate clients.

In a report prepared in 2000 summarizing the significant accounting policies for "Danberger Associates, Inc. and its Affiliates," the corporations' accountant stated, "Danberger Associates, Inc. and its affiliates provide advertising and marketing consultation and fulfillment to major domestic and international corporations. The business is conducted through multiple Delaware corporations under common control. . . . The same individual owns all issued shares [of stock]." The accountant admitted that Danberger Associates, Inc., Danberger Communications, Inc., Danberger AMPM, Inc., and Danberger HR, Inc. each have separated EINs and are considered separate legal entities for tax purposes. However, the record reflects that money frequently passed between the affiliates for various purposes and a single "Peachtree" accounting system was used to maintain the assets for the four affiliated Danberger corporations. Additionally, a Form 1120: Election Schedule for a Controlled Group of Corporations Worksheet was filed for the 2000 tax year and indicates that Danberger Associates, Inc., Danberger Communications, Inc., Danberger AMPM, Inc., and Danberger HR, Inc. are a group of corporations that are commonly controlled.

Between 2002 and 2003, DuPont decreased its marketing efforts through Danberger Associates, Inc. Additionally, by this time, Wife was less interested in servicing DuPont accounts, because much of their marketing material had become standardized. Wife decided to reconsolidate the Danberger affiliated corporations, since there was no longer a need for multiple entities. The final S–Corporation Tax return filed for Danberger Associates, Inc. in 2002 indicates that Danberger Associates, Inc. sold all of its assets to Danberger HR, Inc. All of Danberger Associates, Inc.'s operations were transferred to Danberger Communications, Inc. On December 31, 2002, Danberger Associates, Inc. was dissolved. In 2003, Wife incurred a paper, non-cash capital gain of $15,662 from dividends that resulted from the dissolution of Danberger Associates, Inc.

On February 19, 2003, after Danberger Associates, Inc. dissolved, Danberger Communications, Inc. was renamed Danberger Associates, Inc. Also on February 19, 2003, Danberger AMPM, Inc. merged with Danberger HR, Inc. with Danberger HR, Inc. being the surviving entity. In this transaction, all of the assets from Danberger, AMPM, Inc. were transferred to Danberger HR, Inc. Finally, on December 31, 2006, Danberger HR, Inc. merged with Danberger Associates, Inc. (the entity formerly known as Danberger Communications, Inc.). All of the assets from Danberger HR, Inc. were transferred to the newly named Danberger Associates, Inc. in this transaction. Throughout the reconsolidation process of the Danberger corporations, the surviving affiliated corporations continued to operate as a single entity, and continued to be held out to clients as Danberger Associates, Inc.

When the parties separated, Danberger Associates, Inc., the corporation that exists today, was the sole remaining corporate

entity of Wife's advertising agency. At the time of the parties' separation, Danberger Associates, Inc. continued to provide branding, marketing, and advertising services to corporate clients.

## ANALYSIS

█ It is Husband's position that since the Danberger Associates, Inc. entity that existed at the time the parties separated was formed during the marriage it is therefore a marital asset subject to equitable property division. Wife contends that since all of Danberger Associates, Inc.'s assets are traceable to a premarital sole proprietorship, the corporation should be excluded from the marital estate.

█ In general, all property acquired by either spouse subsequent to a marriage is presumed to marital property and thus subject to division by the Court upon divorce.[1] 13 *Del. C.* § 1513(b) defines marital property "all property acquired by either party subsequent to the marriage except: (1) Property acquired by an individual spouse by bequest, devise or descent or by gift, except gifts between spouses, provided the gifted property is titled and maintained in the sole name of the donee spouse, or a gift tax return is filed reporting the transfer of the gifted property in the sole name of the donee spouse or a notarized document, executed before or contemporaneously with the transfer, is offered demonstrating the nature of the transfer; (2) Property acquired in exchange for property acquired prior to the marriage; (3) Property excluded by valid agreement of the parties; and (4) The increase in value of property acquired prior to the marriage." Addi-

tionally, 13 *Del. C.* § 1513(c) provides that "all property acquired by either party subsequent to the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety." The burden of overcoming the statutory presumption that property acquired during the marriage is marital and falls within one of the statutory exceptions is placed upon the party seeking to exclude the property from division between the parties.[2]

In the case at bar, Wife seeks to exclude Danberger Associates, Inc. from the marital estate. Wife argues that Danberger Associates, Inc. is excluded from marital property pursuant to 13 *Del. C.* § 1513(b)(2) as property acquired in exchange for property acquired prior to the marriage. In determining whether Danberger Associates, Inc. is traceable to premarital assets, the Court will examine the various corporate entities that existed throughout the parties' marriage and what if any effect the changes in these entities had on the property's status.

### A. Wife Formed a Sole Proprietorship Before the Parties' Married.

The evidence establishes that Wife created a sole proprietorship prior the parties' marriage. The purpose of this sole proprietorship was to provide branding, marketing, and advertising services to corporate clients.

The parties filed a joint income tax return for the 1984 tax year. This tax return contains a Schedule C, which reflects that Wife operated a sole proprietorship in

---

1. *J.D.P. v. F.J.H.*, 399 A.2d 207, 209 (Del. 1979).

2. *Lynam v. Gallagher*, 526 A.2d 878, 882 (Del. 1987); *E.C.W. v. M.A.W.*, 419 A.2d 934, 935 (Del.1980); Husband *R.T.G. v. Wife G.K.G.*, 410 A.2d 155, 160 (Del.1979); *J.D.P. v. F.J.H.*, 399 A.2d 207, 211 (Del.1979).

1984. The 1984 Schedule C also indicates that Wife included a business deduction for the depreciation of assets, namely a computer and an answering machine. A Form 4562 which was attached to the 1984 tax returns shows that Wife took a full year of depreciation for these assets and that the assets were placed in service at the beginning of the year. Thus the tax records establishes that Wife's sole proprietorship was formed at the beginning of the year, prior to the parties' marriage on June 10, 1984.

Additionally, Wife obtained an Employer Identification Number for her sole proprietorship on January 1, 1984. Corporate records from Danberger Associates, Inc. also list Wife's date of hire for pension, annuity, and 401(k) purposes as January 1, 1984. Wife's college roommate, Paulette, Stine recalls Wife inviting her to form an advertising partnership in the fall of 1983. Ms. Stine also remembers Wife discussing her sole proprietorship in the spring of 1984 before the parties were married.

Pursuant to the Sanctions Decision, the Court may also apply an adverse inference that additional documents exists which support Wife's position that Danberger Associates, Inc. is traceable to premarital assets. Wife alleged that premarital tax returns and supporting documents were maintained in this filing cabinet in the marital home. The Court found that these were destroyed by Husband after the parties separated. Accordingly, the Court issued sanctions against Husband for violating his duty to preserve evidence. Specifically, the Court granted an adverse inference in favor of Wife, that the documents destroyed by Husband would have supported Wife's position that Danberger Associates, Inc. is traceable to premarital assets. However, the Court does not find it necessary to apply this adverse inference as Wife has presented a preponderance of independent evidence to support her proposition that she formed a sole proprietorship prior to the parties' marriage on June 10, 1984.

Accordingly, the Court finds that Wife formed a sole proprietorship to provide branding, marketing, and advertising services to corporate clients prior to the parties' marriage on June 10, 1984.

## B. The 1986 Incorporation of Danberger Associates, Inc. Indicates That All Corporate Assets Are Traceable to the Premarital Sole Proprietorship.

Danberger Associates, Inc. was incorporated on September 18, 1986. Danberger Associates, Inc. had an identical business purpose as the sole proprietorship: to provide branding, marketing, and advertising services to corporate clients. Additionally, Danberger Associates, Inc. had the exact same clients as Wife's sole proprietorship. Wife was the sole shareholder of Danberger Associates, Inc. throughout its existence. Husband admitted that he never owned stock of the company, was never an employee of Danberger Associates, Inc., and was not involved in the day-to-day operations of the company or any of the affiliated companies.

Since Danberger Associates, Inc. was incorporated while the parties were married; it is initially presumed to be a marital asset and subject to property division. However, the record reflects that Danberger Associates, Inc. was wholly funded by assets from the premarital sole proprietorship. The initially corporate tax return for Danberger Associates, Inc., filed for the 1986 tax year, contains a Transferee's Statement. This Statement indicates that Danberger Associates, Inc. assumed $63,588 in assets and $8500 in liability from Wife's sole proprietorship. In exchange, Wife received 100% of Danberger

Associates, Inc.'s common stock. The Transferee's statement also indicates that Danberger Associates, Inc. received no cash or other property in this transaction. As discussed above, Wife formed her sole proprietorship prior to the parties' marriage. Therefore, the Court finds that Danberger Associates, Inc. was property acquired by Wife in exchange for property acquired prior to the parties' marriage. Accordingly, Danberger Associates, Inc. is not marital property and is excluded from the parties' marital estate.

### C. The 1997 Incorporation of Danberger Associates, Inc.'s Affiliate Corporations Did Not Change the Premarital Status of Danberger Associates, Inc.

Danberger Associates, Inc. changed its corporate structure in 1997 after its largest client, DuPont, issued a new sourcing contract. DuPont sought to conduct line reviews of Danberger Associates, Inc.'s books and records. In order to protect the identity of other clients, a new operating company called Danberger Communications, Inc. was incorporated on September 30, 1997. Danberger Communications, Inc. had an identical corporate purpose as Danberger Associates, Inc.: to provide branding, marketing, and advertising services to corporate clients. Danberger Communications, Inc. serviced all non-DuPont clients to protect their confidentiality and Danberger Associates, Inc. continued to service DuPont. By dividing the clients into two distinct corporate groups, DuPont entities and non-DuPont entities, DuPont would not be able to review Wife's records regarding non-DuPont clients of Wife. The initial corporate tax return for Danberger Communications reflects that the Danberger Communications, Inc. was initially funded by a cashless, paper transfer of $100. Wife was the sole shareholder of

Danberger Communications throughout its existence.

Two additional corporations were incorporated in 1997 to facilitate the needs of Wife's advertising enterprise. Both Danberger AMPM, Inc. and Danberger HR, Inc. were incorporated on October 30, 1997. The purpose of Danberger AMPM, Inc. was to serve as an asset and property leasing entity, leasing the office and equipment services of the business to Danberger Associates, Inc. and Danberger Communications, Inc. Danberger HR, Inc. was an employee leasing entity that managed all of the agency's payroll and human resource needs for Wife's business venture. Both of these corporations were initially funded by a cashless, paper transfer of $100. Wife was the sole shareholder for both Danberger AMPM, Inc. and Danberger HR, Inc. throughout their existence.

Danberger Associates, Inc., Danberger Communications, Inc., Danberger AMPM, Inc., and Danberger HR, Inc. were all affiliate entities with a common owner. All of the four of these organizations carried on the unified purpose of providing branding, marketing, and advertising services to corporate clients. While the four corporations were separate entities for contractual and taxation purposes, they shared a common office location and common accounting process. Throughout the existence of the four corporations Wife and her employees continually held their business out as Danberger Associates, Inc. Accordingly, the Court finds that the creation of three affiliate corporations in 1997 was a change merely in form, and not substance of Wife's ongoing advertising enterprise. The change in corporate structure was necessary to serve a specific need, namely protecting client identity from a DuPont line review and to provide certain benefits to Wife. Therefore, the Court finds that the formations of Danber-

ger Communications, Inc., Danberger AMPM, Inc., and Danberger HR, Inc. did not change the premarital status of Wife's business enterprise.

## D. The Dissolution of Danberger Associates, Inc. in 2002 and the Subsequent Reconsolidation of the Danberger Affiliates Did Not Change the Premarital Nature of Wife's Advertising Enterprise.

Following a decline in the amount of work Danberger Associates, Inc. received from DuPont, a determination was made by Wife after consultation with her accountant, that it was no longer necessary for the Danberger Associates, Inc. and its affiliates to operate as separate corporations. On December 31, 2002, Danberger Associates, Inc. dissolved. All Danberger Associates, Inc.'s assets were transferred to Danberger HR, Inc. and all of its operations were transferred to Danberger Communications, Inc. Six weeks later, on February 19, 2003 Danberger Communications, Inc. changed its name to Danberger Associates, Inc. Additionally, on February 19, 2003 Danberger AMPM, Inc. transferred all of its assets to and merged with Danberger HR, Inc. Lastly, on December 31, 2006, Danberger HR, Inc. merged with Danberger Associates, Inc. with Danberger Associates, Inc. surviving the merger transaction. Throughout the period of reconsolidation Danberger Associates, Inc. and its affiliates maintained the continued purpose of providing branding, marketing, and advertising services to corporate clients. Additionally, Wife remained the sole shareholder of Danberger Associates, Inc. and all of its affiliates.

Husband argues that because the original incarnation of Danberger Associates, Inc. dissolved on December 31, 2002, the current assets are no longer traceable to premarital assets. However, Danberger Associates, Inc. transferred all of its assets and operations to other Danberger affiliate corporations. Additionally, the successor corporation, Danberger Communications, Inc., assumed the operations and name of Danberger Associates, Inc. almost immediately after the dissolution of Danberger Associates, Inc. Similar to the creation of the Danberger affiliates, the reconsolidation that occurred between 2002 and 2006 was a change of form rather than substance. Throughout this time period, Danberger Associates, Inc. continued to operate out of the same office with a unified purpose. No additional marital capital was infused into the businesses. Accordingly, the dissolution of Danberger Associates, Inc. and reconsolidation of its affiliates did not change the premarital nature of Wife's advertising enterprise, which remained directly traceable to premarital assets. Therefore, the current incarnation of Danberger Associates, Inc. is in name and substance the same business venture that Wife created before the parties' marriage. Wife's stock in Danberger Associates, Inc. is traceable to premarital assets and shall be excluded from the marital estate.

## CONCLUSION

For the reasons stated above, the Court finds that the corporation named Danberger Associates, Inc. that existed at the time of the parties' divorce is directly traceable to Wife's premarital business venture. Wife's advertising business currently exists as a single corporation named Danberger Associates, Inc., a sub-chapter S corporation of which Wife is the sole shareholder. The current Danberger Associates, Inc. is both the successor in interest to a corporation by the same name which was incorporated in 1986 as well as the resulting entity from a series of mergers and a renaming of entities created in 1997, namely, Danberger Communications,

Inc., Danberger HR, Inc., and Danberger AMPM, Inc. All of these entities served the exclusive purpose of carrying on Wife's branding, marketing, and advertising enterprise, of which Wife has always been the sole shareholder. Furthermore, Wife's acquisition of the common stock of the Danberger Associates, Inc. which was incorporated in 1986 was the result of an exchange, wherein the corporation acquired all of the assets and liabilities of Wife's sole proprietorship, which was created in January 1984, prior to the parties' marriage. Accordingly, the Court finds that Danberger Associates, Inc., Wife's current business venture, is excluded from the marital estate on the basis that it is property that was acquired by exchange for property acquired before the marriage.